IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KENNETH L. LAWSON,<br><br>            Plaintiff,<br><br>      vs.<br><br>UNIVERSITY OF HAWAIʻI, *et al.*,<br><br>            Defendants. | Civil No. 24-00172 LEK-RT<br><br>ORDER DENYING MOTION FOR RECUSAL OF DISTRICT COURT JUDGE PURSUANT TO 28 U.S.C. §§ 144 AND 455 |

## **INTRODUCTION**

Plaintiff Kenneth L. Lawson moves to recuse the assigned U.S. District Judge, the Honorable Leslie E. Kobayashi, from his pending civil lawsuit.  ECF Nos. 45 & 46.  The motion has been referred to me for decision.  Because I conclude there is no valid basis for Judge Kobayashi's recusal from this case, the motion is DENIED.

## **BACKGROUND**

### A.    **Factual Background**

Professor Lawson is a tenured faculty member at the William S. Richardson School of Law (WSRSL), the law school of the University of Hawaiʻi at Mānoa (UH).  ECF No. 43 (First Am. Verified Compl.), at PageID.1279.  In this lawsuit, he principally alleges that UH and WSRSL officials have violated his First

Amendment rights (through viewpoint discrimination, retaliation, and prior restraints), his Fourteenth Amendment procedural due process rights, and his statutory right to be protected from civil rights violations.  ECF No. 43.  At the heart of his claims is a faculty meeting that took place on February 17, 2023.

Here is how Professor Lawson describes that meeting.  During an open-forum portion of the gathering, Professor Lawson—who is himself a "Black male of African American descent," *id.* at PageID.1281—asked "why no Black people were asked to serve" on an upcoming Black History Month program "on the U.S. Black Civil Rights Movement and Dr. Martin Luther King's Letter from the Birmingham Jail," *id.* at PageID.1291.  Professor Lawson "explained why this slight had been hurtful, particularly to WSRSL's Black students, even if done innocently."  *Id.*  He "called it an example of 'Nice Racism,'" *id.*, which he defines as "racism resulting from unconscious racial bias," *id.* at PageID.1294.  When Camille Nelson—the Dean of WSRSL—stated that, as a Black woman, she understood his concerns, Professor Lawson countered that because Dean Nelson "had been born and raised in Jamaica and Canada, respectively, she and her family did not personally experience the U.S. Black Civil Rights Movement, Jim Crow segregation, or forced busing, which is the legacy that Black History Month is all about."  *Id.* at PageID.1292.  Professor Lawson described, among other things, the "physical beatings and discrimination his parents and other close family members

endured as victims of racism at the height of the U.S. Black Civil Rights Movement," and he explained that he "followed the teachings of Malcolm X who believed in protesting peacefully but using self-defense if attacked." *Id.* at PageID.1292-93.  When "a White female faculty member" questioned why Black persons would "feel hurt," given that "Black people could attend the event and participate from the audience," Professor Lawson rejoined that this was "another example of 'Nice Racism.'" *Id.* at PageID.1293-94.

The next day, Professor Lawson sent an email to Dean Nelson and others "reiterating his concerns about the Black History Month event." *Id.* at PageID.1295.  Later, "Professor Lawson used the WSRSL listserv on February 21, 2023, to call for a boycott of the Black History Month event." *Id.* at PageID.1297.

At some point after the February 17, 2023, meeting, Dean Nelson made "racial discrimination claims" against Professor Lawson to UH's provost, Michael Bruno, and requested that Professor Lawson "be required to undergo anger management training." *Id.* at PageID.1295.  Dean Nelson thereafter "encouraged or solicited others to make complaints." *Id.*  Within a week, Title IX complaints were made against Professor Lawson. *Id.* at PageID.1301.  In response to these complaints, Provost Bruno "unilaterally banned Professor Lawson from the WSRSL campus indefinitely, restricted his use of the WSRSL listserv, and issued no-contact orders against Professor Lawson," pending the outcome of Provost

Bruno's investigation.  *Id.* at PageID.1304.  Professor Lawson challenged these

sanctions through UH's internal procedures, but they were upheld.

     This lawsuit followed.  In it, Professor Lawson alleges that the complaints

that Dean Nelson and others made against him were pretextual.  *See, e.g.*, *id.* at

PageID.1325-29.  As he sees it, UH's sanctions against him were retaliation for the

viewpoints he expressed at the February 17, 2023, meeting.[1]

### B.    Procedural Background

     Professor Lawson brought his first federal lawsuit in August 2023.  *See* Civil

No. 23-00348-LEK-RT.  He later voluntarily dismissed that first lawsuit, and then

filed a new complaint on April 15, 2024, which initiated the pending lawsuit.  ECF

No. 1.  In this suit, Professor Lawson names the University of Hawaiʻi as a

defendant.  He also names Provost Bruno, Dean Nelson, David Lassner (UH's

President), and Nicholas A. Mirkay (Associate Dean of WSRSL) as defendants in

their official and individual capacities.  ECF No. 43 (First Am. Verified Compl.),

at PageID.1276.

     After initiating the current action, Professor Lawson moved for a

preliminary injunction.  ECF No. 14.  He followed with a motion for a temporary

---

[1]    The complaint also contains a number of factual allegations to the effect that
WSRSL has denied Professor Lawson "equal pay for equal work."  ECF No. 43, at
PageID.1285.  Professor Lawson's federal lawsuit does not, however, bring claims
based on unfair or discriminatory compensation.

restraining order.  ECF No. 20.  After a hearing, Judge Kobayashi denied the request for a temporary restraining order in a twenty-six-page written order, finding that Professor Lawson had not established a likelihood of success on his First Amendment retaliation claim.  ECF No. 24.  Judge Kobayashi concluded, among other things, that Professor Lawson had failed to show that it was his constitutionally protected speech, as opposed to his conduct, that prompted the disciplinary actions against him.  *Id.* at PageID.982-84.

Defendants moved to dismiss or stay the case, pending the resolution of two other cases based on the same facts and brought by Professor Lawson in state court.  ECF No. 40.  Judge Kobayashi set a briefing schedule and a hearing on Defendants' motion.  ECF No. 42.  But less than a week later, on May 30, 2024, Professor Lawson filed a First Amended Verified Complaint, ECF No. 43, as well as a new motion for a temporary restraining order and preliminary injunction, ECF No. 44.  That same day, Professor Lawson moved for the recusal of Judge Kobayashi from his case.  ECF No. 45.

## DISCUSSION

Professor Lawson seeks Judge Kobayashi's recusal under two separate statutory provisions:  28 U.S.C. §§ 144 and 455.  The same standard governs both provisions:  an assigned judge should be recused only if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might

reasonably be questioned." *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008) (internal quotation marks omitted), *abrogated on other grounds by Simmons v. Himmelreich*, 578 U.S. 621 (2016).

Importantly, the "reasonable person" is "not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (internal quotation marks omitted). The Ninth Circuit has cautioned that the "reasonable person" standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Id.* (internal quotation marks omitted); *see also* ABA Comm. on Ethics & Pro. Resp., Formal Op. 488 (2019) ("[J]udges must avoid disqualifying themselves too quickly or too often lest litigants be encouraged to use disqualification motions as a means of judge-shopping . . . ."). Moreover, the alleged bias "must usually stem from an extrajudicial source"—that is, a judge's rulings alone will not afford a valid basis for recusal, except in highly unusual circumstances. *Pesnell*, 543 F.3d at 1044.

Although Sections 144 and 455 require the same substantive assessment, they have different procedural requirements. Whereas the assigned district judge ordinarily must resolve a Section 455 motion for herself, Section 144 instead requires that a timely affidavit "be referred to another judge for a determination of

its merits." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980).  And in his motion, Professor Lawson himself requests that "another district judge decide this motion pursuant to § 144."  ECF No. 45, at PageID.1698.  For these reasons, Professor Lawson's motion for recusal is properly before me.

In his motion, Professor Lawson argues that Judge Kobayashi should be recused from his lawsuit because of what he characterizes as her "undisclosed and ongoing personal associations" with certain defendants.  *Id.* at PageID.1697.  In particular, Professor Lawson complains of (1) Judge Kobayashi's associations with Dean Nelson, and (2) Judge Kobayashi's associations with UH and WSRSL.  I will address each of these in turn.

## A.    Judge Kobayashi's Associations with Dean Nelson

Professor Lawson's motion makes the following factual allegations about Judge Kobayashi's associations with Dean Nelson, which I accept as true for purposes of resolving his motion:

- Judge Kobayashi serves on the Board of Advisors of the Institute for the Advancement of the American Legal System (IAALS), on which Dean Nelson also serves, and joined that board shortly after she had been assigned to preside over this case; and

- Judge Kobayashi attended IAALS board meetings, which Dean Nelson also attended, while Professor Lawson's lawsuit was pending.

Professor Lawson does not suggest that Judge Kobayashi is receiving compensation (beyond reimbursements for travel and the like) for her service on

IAALS's board.  His argument, instead, is that as "members of the IAALS Board, Judge Kobayashi and Defendant Nelson share a vested interest in protecting and upholding the reputation of IAALS and its Board members."  *Id.* at PageID.1700.  In Professor Lawson's view, "[a] reasonable person would expect Judge Kobayashi to give her fellow Board member the benefit of doubt in the case of a close call."  *Id.*

I do not agree.  Critical to my assessment is the fact that IAALS is an organization devoted to the proper administration of the legal system.  *See* ECF No. 45-7, at PageID.1789 ("IAALS, the Institute for the Advancement of the American Legal System at the University of Denver, is an independent research organization that innovates and advances solutions that make our civil justice system more just.").  While a reasonable person might assume that a judge has unusually close friendships and shared private interests with fellow members of a non-law-related board—imagine, for instance, the judge who goes out of his way to join the board of a birdwatching group—the same cannot be said of a judge who joins the board of a legal organization.  A reasonable person would infer that a judge who chooses to volunteer her time on the board of an organization such as IAALS is doing so because of her professional interest in helping to promote the sound administration of the law.  That is certainly the proper inference for Judge Kobayashi, who, as Professor Lawson recognizes, *see* ECF No. 46, at

8

PageID.1822, is also a member of the Judicial Conference of the United States—

the national policymaking body for the federal judiciary—and thus has exceptional

administrative experience.  It follows that a reasonable person would not assume

that Judge Kobayashi's relationship with other members of a board such as IAALS

is anything other than professional.

Professional relationships of the sort presented here do not require recusal.

Consider, for example, Judge Martin's opinion denying a recusal motion in *Mass v.*

*McClenahan*, No. 93 Civ. 3290, 1995 WL 106106 (S.D.N.Y. Mar. 9, 1995).  Judge

Martin explained:

> As a judge, I have continued to be active in bar association affairs and
> serve as a member of a committee of the Association of the Bar of the
> City of New York.  In connection with that service, I have worked on
> reports with other members of the committee.  I certainly would not
> consider such professional association alone as giving rise to a ground
> for recusal if another such member of that committee were to appear
> before me.

*Id.* at *3.  Judge Kobayashi's relationship to Dean Nelson is akin to the "other

members of the committee" to which Judge Martin referred.  *Id.*  Professional

associations of that sort do not give rise to a ground for recusal.  *Id.*  And while an

"unduly suspicious" person might read more into Judge Kobayashi's board

membership on IAALS, a "well-informed, thoughtful observer" would not.

*Holland*, 519 F.3d at 913 (internal quotation marks omitted).

Professor Lawson nonetheless argues that there are unique circumstances here that make Judge Kobayashi's board membership concerning.  In particular, he points out that he filed his first federal lawsuit naming Dean Nelson as a defendant in August 2023; that Judge Kobayashi was appointed to the board in September 2023; that Judge Kobayashi and Dean Nelson traveled to Colorado for an IAALS board meeting in October 2023; that Judge Kobayashi denied his request for expedited consideration of his motion for a preliminary injunction on April 19, 2024; and that, days later on April 25, 2024, there was another IAALS board meeting.  ECF No. 45, at PageID.1701.  These facts and dates show that Judge Kobayashi was associating with IAALS while also presiding over Professor Lawson's case.  But given that professional associations of this sort do not require recusal, Judge Kobayashi had no obligation to abstain from IAALS activities during the pendency of this suit.

More generally, Professor Lawson suggests that a reasonable person "could consider it highly unlikely that a Hawaii-based Judge and the Dean of Hawaii's only law school would end up on the Board of a Colorado-based organization wholly independently of one another's assessment of the other."  *Id.* at PageID.1702.  But there can be no suggestion that Dean Nelson was accepted onto IAALS's board because of any positive evaluation by Judge Kobayashi; as Professor Lawson recognizes, Dean Nelson has been a member of the board since

2018, well before Judge Kobayashi joined.  *Id.*  And no reasonable person would infer that Judge Kobayashi became a member of IAALS's board because of Dean Nelson's arm twisting.  Put differently, there is no reason to believe that a judge with Judge Kobayashi's extensive experience—which includes not only decades of service as a U.S. Magistrate Judge and U.S. District Judge, but also, as noted, service on the Judicial Conference of the United States—would require an assist from Dean Nelson to be accepted onto IAALS's board.

Professor Lawson also suggests that it is the nature of his claims that raises concerns.  Recall that Professor Lawson's claims grow out of a February 17, 2024, faculty meeting at which Dean Nelson was present.  Recall, too, that Professor Lawson contends that Dean Nelson and others made pretextual claims against him in an effort to retaliate for viewpoints he expressed at the faculty meeting. Professor Lawson suggests that Judge Kobayashi would be reluctant to find that another member of IAALS's board violated his constitutional rights.  *See id.* at PageID.1700.  That suggestion is not persuasive.  Professor Lawson's lawsuit does not allege that Dean Nelson or any other member of IAALS's board has engaged in any board-related impropriety.  The allegations concern, instead, Dean Nelson's conduct in the course of her employment at WSRSL—conduct having no palpable connection to her service on IAALS's board, on which she had been serving before she became WSRSL's dean.  There is no reason to doubt Judge Kobayashi's

11

impartiality as to claims of that sort.  The fact that Judge Kobayashi has a

professional association with IAALS board members would not lead a reasonable

person to question whether she can impartially assess the behavior of any of those

board members in their non-board capacities.  *See In re Complaint of Jud.*

*Misconduct*, 816 F.3d 1266, 1267-68 (9th Cir. 2016) (dismissing complaint that

alleged the "appearance of impropriety" because of a judge's affiliations with the

defendant university, and noting that "service on an alumni board" does not create

an appearance of impropriety "when it does not create a fiduciary interest in

pending litigation").

Finally, in a supplemental filing, Professor Lawson contends that Judge

Kobayashi has not fully complied with her mandatory obligation to file an annual

Financial Disclosure Report, or "FDR."  ECF No. 46, at PageID.1821.  He states

that Judge Kobayashi's FDRs for 2020 through 2023 are not yet publicly available,

and if they were available, he would more readily have obtained information about

her role on IAALS's board.  But even assuming Professor Lawson is correct in his

belief that Judge Kobayashi has not complied with her statutory obligation (that is,

assuming there is not some legitimate reason for a delay in the FDRs becoming

public), it is too speculative to suggest that any delay in filing FDRs has anything

to do with Professor Lawson and his current lawsuit.  No reasonable person would

conclude that Judge Kobayashi's impartiality in this lawsuit should be questioned

because her FDRs are not yet publicly available.  That is especially the case

because Judge Kobayashi's participation in IAALS was made public in other

ways—for example, Professor Lawson's own motion attaches IAALS's 2023

annual report, in which Judge Kobayashi is listed as a board member, *see* ECF No.

45-7, at PageID.1807.

For the foregoing reasons, I conclude that Judge Kobayashi's membership

on IAALS's board, and her travel to IAALS board meetings in Colorado, do not

afford a valid basis for her recusal from this case.

### B.     Judge Kobayashi's Associations with UH and WSRSL

Professor Lawson's motion next argues that recusal is warranted because of

Judge Kobayashi's more general associations with UH and WSRSL.  In particular,

the motion notes:

- Judge Kobayashi attended WSRSL's 2024 commencement ceremony, "appeared in full academic regalia," and "was treated by Defendants as an honored guest and dignitary," ECF No. 45, at PageID.1697; and

- Judge Kobayashi attended UH and WSRSL as a student and taught at WSRSL as an adjunct professor several decades ago, and certain potential witnesses in the pending case were classmates or colleagues of hers.

To begin with, I conclude that Judge Kobayashi's attendance at WSRSL's 2024 commencement ceremony is not a valid basis for her recusal.[2]  In these circumstances, there is nothing unusual—certainly nothing the rules of recusal would seek to discourage—about a judge attending the commencement ceremony of the law school within her federal district.  Nor is there anything unusual or problematic about the law school recognizing the presence of that judge.  *Cf. In re Complaint of Jud. Misconduct*, 816 F.3d at 1267-68 (explaining that "the receipt of alumni awards do[es] not create the appearance of impropriety" for a judge presiding over a case in which the university is a defendant).

Turn now to the fact that Judge Kobayashi, several decades ago, attended UH and WSRSL and taught as an adjunct professor at WSRSL.  Here, Professor Lawson clarifies that it is not the fact of these associations, but rather the fact that they were not disclosed to him that supports his request for recusal.  *See* ECF No. 45, at PageID.1698 ("Plaintiff's concern is not that Judge Kobayashi is a UH and WSRSL alumna, but that she failed to disclose that information while presiding over a case where UH and the Dean of the WSRSL are named defendants."); *see also* ECF No. 45-1, at PageID.1720 (Lawson Decl. ¶ 10) (similar).

---

[2]    I also attended this ceremony, and the law school recognized the fact that I was there.  My attendance does not call into question my impartiality in this matter, and no reasonable person would think otherwise.

14

Professor Lawson complains that Judge Kobayashi's readily accessible judicial biographies do not mention that she attended UH and WSRSL.  But the explanation for that omission is evident:  Judge Kobayashi did not graduate from either institution.  As Professor Lawson himself concedes, Judge Kobayashi obtained her undergraduate degree from Wellesley College and her law degree from the Boston College School of Law.  ECF No. 45, at PageID.1709.  She attended UH for two years but did not receive a degree (because she transferred to Wellesley College).  *Id.*  And she merely attended WSRSL as a visiting student.  *Id.*  It is hardly surprising that a judge—or, really, anyone—would disclose the schools from which they graduated but not necessarily schools they attended but from which they did not obtain a degree.  An omission of that sort would not cause a reasonable person to suspect that the information is being improperly hidden.  In any event, Professor Lawson's own submission makes clear that Judge Kobayashi did not endeavor to conceal this information:  she accurately disclosed all of it in her Senate confirmation materials in 2010.  *Id.*  Professor Lawson complains that these Senate documents were difficult to peruse because they are not available in a text-searchable format.  *Id.*  But surely the format of a PDF is not enough to require a judge to recuse herself from a case.[3]

---

[3]    Nor is Judge Kobayashi's recusal warranted by the fact that she might have shared a college or law school campus, several decades ago, with individuals who

Professor Lawson appears to resist this conclusion, arguing that *United States v. Hubbard*, Crim. No. 12-01133, 2022 WL 281548 (D. Haw. Jan. 31, 2022), supports his position that recusal is warranted where university associations are not disclosed.  In *Hubbard*, Judge Gillmor resolved a motion to recuse Judge Kobayashi filed by a defendant in a criminal case in which UH was a fraud victim. Judge Gillmor considered the defendant's argument that "Judge Kobayashi 'concealed' that she had been a Professor" at UH and "that she had relatives who attended" UH.  *Id.* at *2.  Judge Gillmor rejected the factual premise of the argument, finding that Judge Kobayashi "never concealed that she previously had taught" at UH, as it was included in her biographies on both the Federal Judicial Center and the District of Hawaiʻi websites.  *Id.*  Pointing to this analysis in *Hubbard*, Professor Lawson argues that his motion should be granted because neither of these websites reflect Judge Kobayashi's attendance at UH and WSRSL, which he suggests is evidence of concealment.

---

might testify in Professor Lawson's case.  Even if one were to assume that Judge Kobayashi must have once been friends with some of these witnesses because they shared a campus as classmates or colleagues, a friendship several decades in the past does not come close to offering a valid basis for recusal.  *See* ABA Formal Op. 488 (recognizing that when "the relationship between the judge and a party or lawyer" has "changed over time" or "ended sufficiently far in the past," then "it is not a current concern when viewed objectively").  Indeed, even present friendships do not necessarily require recusal: "Judicial ethics authorities agree that judges need not disqualify themselves in many cases in which a party or lawyer is a friend."  *Id.*

Professor Lawson's reliance on *Hubbard* is misplaced.  Judge Gillmor did not endorse the notion that recusal is warranted when a judge declines to disclose her associations with a university.  Judge Gillmor considered the allegations of concealment only because they were offered as good cause for the defendant's tardy filing of his recusal motion.  The defendant in *Hubbard* filed his motion more than three years after judgment had been entered and more than nine years after the proceedings commenced.  *Id.* at *2.  Finding that the information on which the motion relied had been public that whole time, Judge Gillmor concluded there was no good cause for the untimely filing.  *Id.* at *2-3.  This analysis might be taken to imply that if associational information is not public, an otherwise untimely recusal motion might be excused.  But it does not mean that a lack of disclosure itself supports recusal.

Furthermore, *Hubbard* persuasively explains why Judge Kobayashi's two-year stint as an adjunct professor does not support her recusal.  "[P]rior service as an adjunct . . . do[es] not create the appearance of impropriety."  *In re Complaint of Jud. Misconduct*, 816 F.3d at 1267-68.  And as Judge Gillmor explained, the fact that Judge Kobayashi taught at UH has long been public.  *Hubbard*, 2022 WL 281548, at *2.

It is true, as Professor Lawson points out, *see* ECF No. 45, at PageID.1704, that Comment 5 to Rule 2.11 of the ABA Model Code of Judicial Conduct

17

provides that a judge "should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification."  But it is also true that Comment 5 employs the hortatory "should," rather than the mandatory "shall" that appears in the text of Rule 2.11 itself.  *See, e.g.*, Rule 2.11(A) ("A judge *shall* disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." (emphasis added)).  The use of "should" in Comment 5 indicates that the recommendation is "permissive rather than mandatory."  *United States v. Cortez-Rivera*, 454 F.3d 1038, 1040-41 (9th Cir. 2006).

As a general matter, then, a judge may decline to volunteer information about her associations, in some cases, without running afoul of the ABA Model Code of Judicial Conduct.  Put simply, the assignment of a judge is not like the selection of a juror:  "A litigant cannot require an unwilling judge to disclose facts and opinions; there is no procedure corresponding to voir dire."  John Leubsdorf, *Theories of Judging and Judge Disqualification*, 62 N.Y.U. L. Rev. 237, 242 (1987).

The upshot is that a "reasonable person"—that is, a person who is not "hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer," *Holland*, 519 F.3d at 913 (internal quotation marks omitted)—generally

would not question a judge's impartiality merely because the judge has made a

discretionary decision not to disclose her associations directly to a litigant.  To put

a finer point on it, a reasonable person would not question Judge Kobayashi's

impartiality toward Professor Lawson merely because she did not make

discretionary disclosures to him about her brief stint as an adjunct professor or

about her time as a student at UH and WSRSL decades ago.

  In sum, Judge Kobayashi's associations with UH and WSRSL do not require

her recusal, either on their own or considered together with Judge Kobayashi's

professional association with Dean Nelson.  And any failure to disclose her general

associations with UH and WSRSL similarly do not provide a valid basis for

recusal.  Professor Lawson's recusal motion is, therefore, without merit.

  **C.**  **Three Final Matters**

  There are three remaining matters to address.  First, in his supplemental

submission, Professor Lawson suggests that Jim On—who was previously a

counsel of record in this case—might have "abruptly terminated his employment

with UH's Office of General Counsel" because of Professor Lawson's recusal

motion.  ECF No. 46, at PageID.1820.  But it requires too far of a speculative leap

to accept the conclusion Professor Lawson advocates.  It bears mentioning, one

final time, that a "reasonable person" for recusal purposes is "not someone who is

hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful

19

observer." *Holland*, 519 F.3d at 913 (internal quotation marks omitted).  Professor Lawson has not offered any valid reason for a well-informed, thoughtful observer to infer that On's actions support Professor Lawson's motion in any way.

Second, Professor Lawson appears to suggest that Judge Kobayashi's decision to deny his motion for a temporary restraining order supports his recusal motion.  *See* ECF No. 45, at PageID.1707-08.  This suggestion is meritless.  It is well-established that "alleged bias must usually stem from an extrajudicial source." *Pesnell*, 543 F.3d at 1044.  "Almost invariably," judicial rulings are "proper grounds for appeal, not for recusal."  *Liteky v. United States*, 510 U.S. 540, 554-56 (1994).  Judge Kobayashi's ruling in this case could explain why Professor Lawson (who has recently renewed his motion for a temporary restraining order) might wish to have his case reassigned to a different judge, but it does not afford a basis for Judge Kobayashi's recusal.

Third and finally, Professor Lawson has filed a "Request for Clarification." ECF No. 49.  He points out that under Section 144, a recusal motion must be assigned to a new judge, and the originally assigned judge must "proceed no further" while awaiting the resolution of the motion.  *Id.* at PageID.2018 (quoting *Sibla*, 624 F.2d at 867 (emphasis omitted)).  Yet on June 3, 2024, Judge Kobayashi issued an Entering Order in which she provided the parties notice of her inclinations as to certain pending motions.  ECF No. 48 (the "June 3 Order").

20

Contending that Section 144 precludes even non-substantive docket entries, Professor Lawson asks for "clarification as [to] why Judge Kobayashi continues to issue orders in this case while the Motion for Recusal is pending."  ECF No. 49, at PageID.2018.  And he argues that the June 3 Order is further evidence of Judge Kobayashi's bias against him.

These arguments also lack merit.  The obvious purpose of the June 3 Order was to provide the parties with guidance about fast-approaching dates and time-sensitive deadlines that remain on the calendar—just days before, Professor Lawson had filed an amended complaint, a motion for a temporary restraining order, a request for a preliminary injunction, and this motion for recusal.  *See* ECF Nos. 43 to 45.  The June 3 Order made clear that Judge Kobayashi would "issue no substantive rulings on the motions in this case until the Motion for Recusal is ruled upon."  ECF No. 48.  No reasonable person would view this guidance as evidence of bias.

## CONCLUSION

For the foregoing reasons, Professor Lawson's motion to recuse Judge Kobayashi from his case is DENIED.  Furthermore, the Request for Clarification is

21

DENIED, and in light of this order, Professor Lawson's Motion for Expedited

Consideration on the Motion to Recuse is DENIED AS MOOT.

IT IS SO ORDERED.

DATED:  June 10, 2024, at Honolulu, Hawai'i.

Micah W.J. Smith
United States District Judge

Civil No. 24-00172 LEK-RT, *Kenneth L. Lawson v. University of Hawai'i*, et al.; ORDER DENYING
MOTION FOR RECUSAL OF DISTRICT COURT JUDGE PURSUANT TO 28 U.S.C. §§ 144 & 455

22