UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KENNETH L. LAWSON,<br><br>             Plaintiff,<br><br>      vs.<br><br>UNIVERSITY OF HAWAI`I, DAVID LASSNER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; MICHAEL BRUNO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; CAMILLE NELSON, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; NICHOLAS A. MIRKAY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND JANE/JOHN DOES 1-10, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>             Defendants. | CIV. NO. 24-00172 LEK-RT |

**ORDER DENYING DEFENDANTS' MOTION TO
STAY AND/OR DISMISS ALL PROCEEDINGS**

On May 22, 2024, Defendants University of Hawai`i ("the University"), David Lassner ("Lassner"), Michael Bruno ("Bruno"), Camille Nelson ("Nelson"), and Nicholas Mirkay ("Mirkay" and collectively "Defendants") filed their Motion to Stay and/or Dismiss All Proceedings ("Motion"). [Dkt. no. 40.] Pro se Plaintiff Kenneth L. Lawson ("Lawson") filed his memorandum in opposition on June 17, 2024, and Defendants filed their reply on July 12, 2024. [Dkt. nos. 59, 67.] This matter came on for hearing on July 29, 2024. Defendants' Motion is

hereby denied because Defendants do not meet the requirements for a stay or dismissal under the Colorado River doctrine and, since Lawson does not bring this action under the collective bargaining agreement, any failure to exhaust the administrative grievance process does not deprive this Court of federal jurisdiction over Lawson's Section 1983 claims.

## BACKGROUND

Lawson filed this action on April 15, 2024. See Verified Complaint, filed 4/15/24 (dkt. no. 1) ("Complaint"). The operative pleading is Lawson's First Amended Verified Complaint, filed on May 30, 2024 ("Amended Complaint"). [Dkt. no. 43.]

The events giving rise to the claims in this case began during a February 17, 2023 faculty meeting ("2/17/23 Meeting") at the University's William S. Richardson School of Law ("WSRSL" or "the law school"), where Lawson is a member of the faculty. See, e.g., Amended Complaint at ¶¶ 2, 16, 66. According to Lawson, he "is presently the only self-identified Black American-born male employee on the WSRSL faculty." [Id. at ¶ 16.] During the 2/17/23 Meeting, Lawson expressed his objections to the scheduled February 23, 2023 Black History Month event that was planned by the law school's Diversity, Equity, and Inclusion committee ("the Event"). See id. at ¶¶ 61-75. Other persons present at the 2/17/23 Meeting complained that

Lawson was disruptive, intimidating, and threatening when speaking about the Event, but Lawson denies their allegations. See, e.g., id. at ¶¶ 76-79, 86-89.

On February 21, 2023, Lawson used the WSRSL email listserv to send an email calling for a boycott of the Event ("2/21/23 Listserv Email"). [Id. at ¶ 91.]

On February 27, 2023, Bruno, who is the University Provost, sent Lawson a notice stating an investigation would be conducted to determine whether Lawson's conduct at the 2/17/3 Meeting and his 2/21/23 Listserv Email created a hostile work environment. [Id. at ¶¶ 11, 124.] Pending the completion of the investigation, Bruno banned Lawson from the WSRSL campus, restricted Lawson's use of the listserv, and ordered Lawson not to have contact with certain WSRSL personnel. [Id. at ¶ 125.]

On March 28, 2023, the restrictions against Lawson were extended and the scope of the investigation was expanded. [Id. at ¶ 130.]

On December 1, 2023, Lawson received the decision by Dean Clementina Ceria-Ulep of the University's School of Nursing ("Decision" and "Dean Ceria-Ulep"). See id. at ¶¶ 139-41. The Decision stated, "there is no evidence that supports the allegation that Lawson used intimidating gestures, pointed or

waved his hands at Nelson[1] or slammed his hands on the desk and it is unlikely that he did so." [Id. at ¶ 148.] The Decision also stated the allegation that Lawson called one or more of his colleagues derogatory names was unsubstantiated. [Id. at ¶ 149.] However, Dean Ceria-Ulep concluded Lawson interrupted and yelled at Nelson. [Id. at ¶ 152.] The Decision noted that Lawson cursed during the 2/17/23 Meeting, and Lawson's cursing was a factor in the ultimate finding that Lawson created a hostile work environment. [Id. at ¶ 162.] The Decision stated, "Lawson's use of terms like 'nice racism' and 'white fragility' constitute[d] workplace violence because 'these are emotionally charged terms and were perceived as disparaging by some'" and violated Executive Policy ("EP") 9.210. [Id. at ¶¶ 165-66.] The Decision concluded "Lawson said Defendant Nelson was 'not Black enough' and engaged in 'discriminatory harassment' by 'questioning Nelson's Black experience.'" [Id. at ¶ 178.]

The Decision recommended that Bruno take the following actions against Lawson:

> One-month suspension without pay; Mandatory one-on-one training with the Office of the Vice Provost for Academic Excellence on EP 9.210, the University's Workplace Non-Violence Policy; Mandatory training with the Office of Equity Assurance on both EP 1.202, Nondiscrimination, Equal Opportunity and Affirmative Action and EP 1.204, Sex and Gender Based Misconduct; and

---

[1] Nelson is the Dean of WSRSL, [Amended Complaint at ¶ 12,] and presided over the 2/17/23 Meeting, see id. at ¶ 64.

> Mandatory anger management training to provide
> Lawson with tools and resources to engage in
> conversations in a collegial manner.

[Id. at ¶ 188.] Lawson argues the corrective actions called for

in the Decision "were significantly harsher than other

[University] faculty members who were previously found to have

violated EP 9.210 or EP 1.202." Id. at ¶ 189; see also id. at

¶ 190 (citing example of another University faculty member that

violated EP 9.210).

On December 6 and 7, 2023, Lawson filed grievances in

response to the Decision, and he filed an appeal. [Id. at

¶¶ 192-93.] On January 30, 2024, Lawson was notified that the

University ruled that his grievances were without merit. [Id. at

¶ 194.] On February 2, 2024, an Appeal Officer upheld the

Decision. Lawson argues that, once the Decision was upheld, it

became final and binding, and ripe for a First Amendment

challenge. [Id. at ¶ 195.]

In a letter dated March 8, 2024, Bruno informed Lawson

that he was adopting the corrective actions described in the

Decision and imposing additional sanctions – including an

expanded no-contact order regarding Professor Susan Serrano and

continued exclusion from the WSRSL campus ("Bruno's 3/8/24

Letter"). [Id. at ¶¶ 200-01.] Lawson alleges Bruno's 3/8/24

Letter retaliates against Lawson because it threatens further

disciplinary action, including termination, if Lawson engages in further protests against anti-Black racism. [Id. at ¶ 203.]

Lawson claims there were false allegations made in the interview statements that Dean Ceira-Ulep relied upon in the Decision. [Id. at ¶¶ 205-17.] Lawson also alleges events that occurred during the eight months before the filing of the Amended Complaint show that the safety concerns which were the purported basis for the adverse actions taken against him were a pretext for retaliation. [Id. at ¶¶ 218-38.]

Lawson states he brings this action under Title 42 United States Code Section 1983, not under the applicable collective bargaining agreement ("CBA"), nor under any state law or other law that requires exhaustion of administrative remedies. [Id. at ¶ 199.] Lawson asserts the following claims: a Section 1983 claim alleging viewpoint discrimination, in violation of the First Amendment, against Nelson, Bruno, and Mirkay,[2] in their individual capacities ("Count I"); a Section 1983 claim alleging First Amendment retaliation against Nelson, Bruno, and Mirkay, in their individual capacities ("Count II"); a Section 1983 claim alleging First Amendment

---

[2] Mirkay is the Associate Dean of WSRSL. [Amended Complaint at ¶ 13.]

retaliation against Lassner,[3] Nelson, Bruno, and Mirkay, in their official capacities ("Count III"); a Section 1983 claim alleging prior restraint of his First Amendment rights against Lassner and Bruno, in their official capacities ("Count IV"); a Section 1983 claim against Lassner and Bruno, in their official capacities, asserting a facial and as-applied challenge to EP 1.202 ("Count V"); a Section 1983 claim against Lassner and Bruno, in their official capacities, asserting a facial and as-applied challenge to EP 9.210 ("Count VI"); a Section 1983 claim alleging violation of his Fourteenth Amendment due process rights, against Lassner, Bruno, Nelson and Mirkay, in their individual capacities ("Count VII"); and a Title 42 United States Code Section 1986 claim alleging neglect to prevent civil rights violations, against Lassner, Bruno, Nelson and Mirkay, in their individual capacities ("Count VIII").[4] [Id. at pgs. 60-78.]

In the instant Motion, Defendants argue this Court should stay or dismiss this action because: Lawson has pending state court actions that raise similar claims; and Lawson failed to exhaust the administrative remedies available under the applicable CBA. [Motion at 2.] Defendants argue the instant case

---

[3] Lassner is the President of the University. [Amended Complaint at ¶ 10.]

[4] The Section 1986 claim appears to have been inadvertently misnumbered as a second "Count VII." See Amended Complaint at pg. 77.

"alleg[es] substantially similar claims and factual assertions as the state lawsuit[s]." [Motion, Mem. in Supp. at 3.] Defendants invoke the Colorado River doctrine and argue this Court should stay this case or dismiss it and allow the state court cases to proceed. [Id. at 4 (citing Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976)).] In the alternative, Defendants argue the CBA that applies to Lawson sets forth specific grievance processes, and the instant case must be dismissed for lack of subject matter jurisdiction because Lawson's claims are based on the CBA, and Lawson has not completed the applicable grievance processes. [Id. at 9-15.]

**DISCUSSION**

**I.   *Colorado River* Doctrine**

This Court turns first to Defendants' argument that the instant case should be stayed or dismissed under the Colorado River doctrine. The Ninth Circuit has stated:

> "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Colorado River, 424 U.S. at 817, 96 S. Ct. 1236 (quoting McLellan [v. Carland], 217 U.S. [268,] 282, 30 S. Ct. 501 [(1910)]). However, the Supreme Court has identified several instances in which it is appropriate for a federal court to abstain from exercising its jurisdiction. See, e.g., id. at 813-17, 96 S. Ct. 1236 (discussing traditional abstention doctrines). As relevant here, in Colorado River, the Supreme Court recognized that in "exceptional circumstances," id. at 813, 96 S.

> Ct. 1236, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" can support a stay of federal litigation in favor of parallel state proceedings, id. at 817, 96 S. Ct. 1236 (alteration in original) (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183, 72 S. Ct. 219, 96 L. Ed. 200 (1952)).

Ernest Bock, LLC v. Steelman, 76 F.4th 827, 835–36 (9th Cir. 2023) (some alterations in Ernest Bock), *cert. denied*, 144 S. Ct. 554 (2024). Although it has similarities with abstention doctrines, the Colorado River doctrine is not an abstention doctrine. Id. at 836.

> [A] stay of federal litigation in favor of state court proceedings "is the exception, not the rule." Colorado River, 424 U.S. at 813, 96 S. Ct. 1236. "Only the clearest of justifications will warrant" a stay, id. at 819, 96 S. Ct. 1236, and the circumstances justifying a stay are "exceedingly rare," Smith [v. Cent. Ariz. Water Conservation Dist.], 418 F.3d [1028,] 1033 [(9th Cir. 2005)].

> This court weighs eight factors to determine whether a Colorado River stay is justified:

> > (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

> R.R. Street [& Co. v. Trans. Ins. Co.], 656 F.3d
> [966,] 978-79 [(9th Cir. 2011)] (citing Holder
> [v. Holder], 305 F.3d [854,] 870 [(9th Cir.
> 2002)]). "The factors are not a 'mechanical
> checklist.' We apply the factors 'in a pragmatic,
> flexible manner with a view to the realities of
> the case at hand. The weight to be given to any
> one factor may vary greatly from case to case.'"
> [United States v.] State Water Res. Control Bd.,
> 988 F.3d [1194,] 1203 [(9th Cir. 2021)]
> (citations omitted) (quoting Moses Cone [Mem.'l
> Hosp. v. Mercury Constr. Corp.], 460 U.S. [1,]
> 16, 21, 103 S. Ct. 927 [(1983)]). "Some factors
> may not apply in some cases," but in other cases,
> "a single factor may decide whether a stay is
> permissible." Id. (cleaned up). "The underlying
> principle guiding this review is a strong
> presumption **against** federal abstention." Seneca
> [Ins. Co. v. Strange Land, Inc.], 862 F.3d [835,]
> 842 [(9th Cir. 2017)] (emphasis added). "Any
> doubt as to whether a factor exists should be
> resolved against a stay, not in favor of one."
> Travelers Indem. Co. v. Madonna, 914 F.2d 1364,
> 1369 (9th Cir. 1990).

Id. at 836-37.

### A.   **Eighth Factor (Parallelism)**

The eighth factor, parallelism, "is a threshold requirement for a Colorado River stay." Id. at 838.

> When a district court decides to dismiss or
> stay under Colorado River, it presumably
> concludes that the parallel state-court
> litigation will be an adequate vehicle for
> the complete and prompt resolution of the
> issues between the parties. If there is any
> substantial doubt as to this, it would be a
> serious abuse of discretion to grant the
> stay or dismissal at all. Thus, the decision
> to invoke Colorado River necessarily
> contemplates that the federal court will
> have nothing further to do in resolving any
> substantive part of the case, whether it
> stays or dismisses.

> Moses Cone, 460 U.S. at 28, 103 S. Ct. 927
> (citations omitted). The Court reiterated that "a
> district court normally would expect the order
> granting the [Colorado River] stay to settle the
> matter for all time." Gulfstream Aerospace Corp.
> v. Mayacamas Corp., 485 U.S. 271, 277, 108 S. Ct.
> 1133, 99 L. Ed. 2d 296 (1988). "[T]he granting of
> a Colorado River [stay] necessarily implies an
> expectation that the state court will resolve the
> dispute." Id. at 278, 108 S. Ct. 1133. Applying
> these principles, we have recognized that
> "[p]arallelism is necessary but not sufficient to
> counsel in favor of abstention." Seneca, 862 F.3d
> at 845. But "exact parallelism . . . is not
> required. It is enough if the two proceedings are
> 'substantially similar.'" Nakash [v. Marciano],
> 882 F.2d [1411,] 1416 [(9th Cir. 1989)]
> (citations omitted).

Id. (some alterations in Ernest Bock).

The Ninth Circuit previously held that "suits were
sufficiently parallel because they concerned the same relevant
conduct and named the same pertinent parties. The parallelism
requirement was met even though additional parties were named in
the state suit, the federal suit included additional claims, and
the suits arguably focused on different aspects of the dispute."
Montanore Mins. Corp. v. Bakie, 867 F.3d 1160, 1170 (9th Cir.
2017) (citing Nakash, 882 F.2d at 1416-17). In Ernest Bock, the
Ninth Circuit recognized that Nakash and Bakie could be
interpreted as permitting a Colorado River stay even where the
state court proceeding does not fully resolve the federal court
case. Ernest Bock, 76 F.4th at 839. However, in other cases, the
Ninth Circuit "expressly held that a 'substantial doubt' about

11

whether continued federal litigation would be necessary after
resolution of state proceedings **precludes** a stay." Id. (emphasis
in Ernest Bock) (citing Intel Corp. v. Advanced Micro Devices,
Inc., 12 F.3d 908, 912-13 (9th Cir. 1993)).

        The Ninth Circuit considered the cases that affirmed
the Intel analysis, as well as case law from other circuits. Id.
at 840-41. The Ninth Circuit ultimately concluded that Intel was
more consistent with Moses Cone and held that: "When one
possible outcome of parallel state court proceedings is
continued federal litigation, we find a 'substantial doubt' that
the state court action will provide a 'complete and prompt
resolution of the issues,' because the federal court may well
have something 'further to do.'" Id. at 841 (quoting Moses Cone,
460 U.S. at 28, 103 S. Ct. 927).

        Lawson has two pending actions filed in the State of
Hawai`i First Circuit Court ("state court"), and Defendants
argue those actions also include claims of discrimination,
retaliation, and whistleblowing based on the same facts alleged
in the instant case. See Motion, Mem. in Supp. at 2-3; see also
Motion, Declaration of Counsel ("Jim On Decl."), Exh. A (First
Amended Complaint, filed 4/17/24, in Lawson v. Univ. of Hawai`i
at Mānoa et al., Civil No. 1CCV-23-0001391 (Hawai`i 1st Cir.
Ct.) ("State Court No. 23-1391")); Jim On Decl., Exh. B (First
Amended Complaint, filed 4/17/24, in Lawson v. Univ. of Hawai`i

12

<u>at Mānoa et al.</u>, Civil No. 1CCV-24-0000340 (Hawai`i 1st Cir. Ct.) ("State Court No. 24-340")).[5]

### 1. __State Court No. 23-13911__

State Court No. 23-1391 alleges breach of a settlement agreement that Lawson and the University of Hawai`i at Mānoa ("UHM") entered into regarding Lawson's October 2021 grievance, which alleged the law school's faculty reclassification system violated state law and the faculty's CBA.[6] [Jim On Decl., Exh. A (First Amended Complaint in State Court No. 23-1391) at ¶¶ 87, 98, 115-19.] State Court No. 23-1391 also alleges the defendants breached the covenant of good faith and fair dealing and made negligent misrepresentations in connection with that settlement agreement. [Id. at ¶¶ 120-27.] Lawson asserts a Hawai`i Revised Statutes Section 378-2 claim alleging discrimination based on race and/or color, as well as a Section 378-2 retaliation claim and a Hawai`i Revised Statutes Section 378-62 whistleblower retaliation claim alleging Lawson was retaliated against because

---

[5] Lawson filed State Court No. 23-1391 on October 25, 2023, and he filed State Court No. 24-340 on March 14, 2024. He is represented by Fujiwara and Rosenbaum, LLC in both of the state court cases.

[6] Lawson has an ongoing dispute with UHM in which he contends that his faculty position was improperly classified and that he is being denied equal pay. Lawson contends these disparities occur because of discrimination based on his race, color, disability, and arrest record. See Jim On Decl., Exh. A (State Court No. 23-1391 First Amended Complaint) at ¶¶ 52-53.

he reported discrimination in his workplace. [Id. at ¶¶ 133-45.] He also alleges an intentional infliction of emotional distress ("IIED") claim and a tortious interference with prospective business advantage claim based upon the conduct that forms the basis of his other claims. [Id. at ¶¶ 128-32, 146-49.] State Court No. 23-1391 relies upon the 2/17/23 Meeting and the events that followed to support Lawson's discrimination and retaliation claims, but here are no First Amendment claims alleged in State Court No. 23-1391.

The alleged breach of the settlement agreement at issue in State Court No. 23-1391 is mentioned in the factual allegations of the Amended Complaint in the instant case. See Amended Complaint at ¶¶ 51-59. The allegations regarding the pay/reclassification dispute, the breach of the settlement agreement, and Lawson's complaints arising therefrom appear to suggest a reason for Defendants' actions that followed the 2/17/23 Meeting. However, Lawson's claims in the instant case are not based upon the pay/classification dispute or the breach of the settlement agreement. In addition, Lassner and Mirkay, who are defendants in the instant case are not named as defendants in State Court No. 23-1391. Thus, although there are a significant number of factual allegations that are common to both State Court No. 23-1391 and the instant case, the resolution of State Court No. 23-1391 would not resolve all of

14

the claims in the instant case. This Court therefore finds that State Court No. 23-1391 is not a parallel proceeding for purposes of the eighth factor of the <u>Colorado River</u> analysis.

### 2.   <u>State Court No. 24-340</u>

Whether State Court No. 24-340 is a parallel proceeding is a closer question. State Court No. 24-340 also includes allegations about the pay/reclassification dispute described in State Court No. 23-1391. <u>See</u> Jim On Decl., Exh. B (State Court No. 24-340 First Amended Complaint) at ¶¶ 24-76. Lawson alleges the investigation arising from the 2/17/23 Meeting was initiated shortly after he filed a complaint with the Hawai`i Civil Rights Commission regarding the discrimination and retaliation related to the pay/reclassification dispute. <u>See</u> <u>id.</u> at ¶ 77. The First Amended Complaint in State Court No. 24-340 includes extensive allegations about the 2/17/23 Meeting, the 2/21/23 Listserv Email, and the investigation and the administrative decisions that followed. <u>See</u> <u>id.</u> at ¶¶ 87-173. Further, those allegations are the basis for Lawson's claims in State Court No. 24-340. In State Court No. 24-340, Lawson alleges: discrimination based on his race and/or color, in violation of Section 378-2; retaliation for reporting workplace discrimination, in violation of Section 378-2; a Section 378-2 aiding and abetting claim against Bruno and Nelson; a

15

whistleblower retaliation claim pursuant to Section 378-62; and an IIED claim. [Id. at ¶¶ 175-94.]

State Court No. 24-340 is based upon the same factual allegations as the instant case. Thus, there are significant overlapping factual issue between State Court No. 24-340 and the instant case. Under the Nakash and Bakie line of cases, the common factual allegations and parties would likely satisfy the parallelism requirement. See Bakie, 867 F.3d at 1170 ("In Nakash, . . . the suits were sufficiently parallel because they concerned the same relevant conduct and named the same pertinent parties." (citing Nakash, 882 F.2d at 1416-17)). However, the parallelism requirement is not met under the Ernest Bock analysis because, regardless of who prevails in State Court No. 24-340, this Court would still "have something further to do" because State Court No. 24-340 would not resolve Lawson's First Amendment claims, nor would it resolve Lawson's challenges to the constitutionality of EP 1.202 and EP 9.210. See Ernest Bock, 76 F.4th at 841 (citation and internal quotation marks omitted).

This Court therefore finds that State Court No. 24-340 does not meet the parallelism requirement.

**B.   Other Factors**

Because the parallelism factor is a threshold requirement, id. at 838, it is not necessary for this Court to

16

address the other factors. However, for the sake of completeness

and because it is a close question whether the parallelism

factor is satisfied as to State Court No. 24-340, this Court

will address the other factors as to the comparison between the

instant case and State Court No. 24-340.

### 1.   **First and Second Factors**

The first factor – which court first assumed

jurisdiction over the property at issue - is neutral because

there is no property at issue in State Court No. 24-340, nor in

the instant case. The second factor – the inconvenience of the

federal forum – is either neutral or inconsequential because

Defendants have made no showing that litigating in this district

court is inconvenient. See id. at 838 n.12 ("We also agree that

factors one [and] two . . . are neutral or inconsequential.

Neither the federal nor the state court has exercised

jurisdiction over property, and . . . . [t]here is also no

indication that the federal forum is inconvenient.").

### 2.   **Third Factor**

As to the third factor, avoiding duplicative

litigation, relevant considerations include duplicating judicial

efforts, wasting judicial resources, and the possibility of

inconsistent results that would cause confusion between the

parties. Id. at 837. However, "[t]he mere possibility of

piecemeal litigation does not constitute an exceptional

circumstance. Instead, the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding." R.R. St., 656 F.3d at 979 (citations and internal quotation marks omitted).[7] Because the instant case and State Court No. 24-340 are based upon the same factual allegations, this Court finds that there is a special concern about piecemeal litigation, including potentially inconsistent results in the factual issues, such as what occurred at the 2/17/23 Meeting and during the subsequent investigation. This concern could be remedied by staying the instant case and allowing the state court to make the relevant factual findings. The third factor therefore weighs in favor of a stay.

### 3.    **Fourth Factor**

As to the fourth factor, the order in which jurisdiction was obtained, State Court No. 24-340 was filed approximately one month before the instant case was filed. That fact, however, is not dispositive because "courts are instructed not simply to compare filing dates, but to analyze the progress made in each case." Ernest Bock, 76 F.4th at 837-38 (citation

---

[7] There was a possibility that the state court might stay State Court No. 24-340 pending the outcome of the instant case because Lawson filed a motion to stay in that case. However, after this Court's hearing on the instant Motion, Lawson withdraw his motion to stay in State Court No. 24-340.

and quotation marks omitted). Lawson argues significant progress
has been made in this case because this Court should consider
the instant case as "a continuation" of <u>Lawson v. University of
Hawai`i et al.</u>, CV 23-00348 LEK-RT ("CV 23-348"), and
significant litigation occurred in that case. <u>See</u> Mem. in Opp.
at 11-12. This Court rejects Lawson's argument that CV 23-348
must be considered as part of the analysis of the fourth factor
because Lawson voluntarily dismissed CV 23-348 and chose to file
the instant case instead of moving to amend the operative
complaint in CV 23-348. <u>See</u> CV 23-348, Notice of Voluntary
Dismissal Without Prejudice Pursuant to F.R.C.P. 41(a)(1)(A)(i),
filed 4/15/24 (dkt. no. 68); Mem. in Opp. at 11 ("because
amending the operative complaint would have taken several weeks
and Lawson sought immediate relief, he voluntarily dismissed
[CV 23-348] and **immediately** filed the currently pending federal
lawsuit five minutes later" (emphasis in original)).

　　　　The state court has made more progress on the merits
of Lawson's claims because it has held a hearing on the
defendants' motion to dismiss. However, the state court has not
made significantly more progress, because the state court has
not issued a decision. Further, a motion to dismiss the Amended
Complaint has been filed in this case. <u>See</u> Defendants' Motion
for Partial Dismissal of Plaintiff's First Amended Verified
Complaint [Dkt. 43], filed 6/13/24 (dkt. no. 57). No ruling has

been issued because this Court has stated that it will not act upon that motion until the instant Motion is resolved. See Minute Order – EO: Order Denying as Moot Defendants' Motion for Partial Dismissal of Plaintiff's Complaint, filed 6/14/24 (dkt. no. 58), at PageID.2076. Under the circumstances here, this Court finds that neither this Court nor the state court has made significantly more progress than the other. The fourth factor of the Colorado River analysis is therefore neutral or inconsequential.

### 4.   Fifth Factor

When analyzing the fifth factor, which addresses the source of the rule of decision, "the presence of federal-law issues must always be a major consideration weighing against" a stay. See Moses Cone, 460 U.S. at 26. However, the Supreme Court has also stated that this factor is less significant where the federal law at issue is one that federal and state courts have concurrent jurisdiction over. Id. at 26. "[F]ederal and state courts enjoy concurrent jurisdiction over . . . 42 U.S.C. § 1983." Legal Econ. Evaluations, Inc. v. Metro. Life Ins. Co., 39 F.3d 951, 956 (9th Cir. 1994). Lawson has not asserted Section 1983 claims in State Court No. 24-340, but he could do so. The fifth factor weighs against a stay, but this Court does not give the fifth factor significant weight because Lawson could pursue his Section 1983 claims in state court.

20

### 5.   **Sixth Factor**

As to the sixth factor, whether the state court case will adequately protect the litigant's rights, nothing in the record suggests a "reason to suspect that either court is incapable of fairly adjudicating the issues before it." See Ernest Bock, 76 F.4th at 837 n.12. Therefore, this factor is neutral or inconsequential.

### 6.   **Seventh Factor**

[T]he seventh factor in our Colorado River test is "the desire to avoid forum shopping." R.R. St., 656 F.3d at 979. "In the Colorado River context, [we have] held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1371 (9th Cir. 1990). "If [the party] pursued suit in a new forum after facing setbacks in the original proceeding, this factor may weigh in favor of a stay." Montanore Minerals, 867 F.3d at 1169 (citation and internal quotation marks omitted). However, "[i]t typically does not constitute forum shopping where a party acted within his rights in filing a suit in the forum of his choice." Seneca Ins., 862 F.3d at 846 (internal quotation marks and citation omitted); see also Holder, 305 F.3d at 869 (deeming it important that granting a stay "would deprive [the husband] of his choice of forum" because the husband chose to file his Hague Convention claim in federal court).

The court also considers a lapse in time in determining whether a party has engaged in forum shopping. For example, when a party waits three-and-a-half years, see Nakash, 882 F.2d at 1417, or two-and-a-half years, see Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins.

Co., 843 F.2d 1253, 1259 (9th Cir. 1988), after
initially filing in state court, that can weigh
in favor of a stay.

There is a strong presumption that the
presence of an additional claim in the federal
suit means that Colorado River is inapplicable.
However, because of the concern over forum
shopping, there might be rare circumstances in
which a district court could properly issue a
partial Colorado River stay. If there is clear-
cut evidence of forum shopping — meaning the
party filing the federal suit clearly added a new
claim to avoid state court adjudication — then
the district court may analyze the claims
separately and decide if a partial stay is
appropriate. When there is concurrent federal and
state court jurisdiction over the additional
claim (as opposed to exclusive federal
jurisdiction), there is stronger evidence of
forum shopping, as the plaintiff in the federal
case could have pursued that additional claim in
state court.

State Water Res., 988 F.3d at 1206–07 (alterations in State

Water Res.). Lawson has exhibited gamesmanship when he dismissed

CV 23-348 and filed the instant case to avoid the filing of a

Federal Rule of Civil Procedure 15(a)(2) motion to amend. See

Mem. in Opp. at 11 (quoted *supra*). Further, because the state

courts and the federal courts have concurrent jurisdiction over

Section 1983 claims, Lawson could have filed the claims that he

currently asserts in the instant case in State Court No. 24-340,

but he chose not to do so. While Lawson has the right to file

his Section 1983 claims in the forum of his choice, this Court

must consider the gamesmanship that he exhibited in dismissing

CV 23-348. The circumstances here raise forum-shopping concerns,

22

and this Court finds that the seventh factor in the <u>Colorado River</u> analysis weighs in favor of a stay.

**C.   <u>Ruling</u>**

The lack of parallelism is a sufficient basis to deny Defendants' request for a stay, or dismissal, under the <u>Colorado River</u> doctrine. Even if the eighth factor were not a threshold factor, only the third and seventh factors weigh in favor of a stay. All of the other factors either weigh against a stay or are neutral/inconsequential. The third and seventh factors alone are insufficient to create the "exceptional circumstances" necessary for a stay or dismissal. <u>See</u> <u>Colorado River</u>, 424 U.S. at 813. Defendants' Motion is therefore denied as to their request for dismissal or a stay under the <u>Colorado River</u> doctrine.

**II.   <u>Lack of Jurisdiction</u>**

Defendants also argue this Court lacks subject matter jurisdiction over Lawson's claims because he failed to exhaust the remedies that are available to him under the applicable CBA. Further, under Hawai`i Revised Statutes Chapter 89, the Hawai`i Labor Relations Board has exclusive jurisdiction over disputes concerning the CBA, even when the action involves both claims concerning the CBA and claims that do not implicate the CBA. [Motion, Mem. in Supp. at 7-15.]

23

The University has a CBA with the University of Hawaii Professional Assembly ("UHPA") for bargaining unit 7, which consists of University faculty, and Article XVIII states: "'The Employer shall not discharge, suspend, or reduce the compensation of any Faculty Member for disciplinary reasons, or take other actions of a disciplinary nature, except for proper cause and in accordance with the procedures set forth in this Article.'" [Id. at 9 (quoting Opposition to Plaintiff's Ex Parte Motion for a Temporary Restraining Order, filed 4/26/24 (dkt. no. 22) ("Opp. to TRO Motion"), Exh. 15 (2021-2025 Agreement between the Governor, the Board of Regents, and the President of the University as the public employer and UHPA on behalf of Collective Bargaining Unit 7 ("Faculty CBA")) at 41).]

Defendants argue that, because Bruno ultimately decided to suspend Lawson and notified Lawson in writing, Lawson was permitted to file a step 2 grievance with the University President, *i.e.*, Lassner, under Article XXIV of the Faculty CBA (Grievance Procedure). [Id. at 10.]

Article XXIV.C.2, titled "Formal Grievance Procedure,"[8] states:

---

[8] "A grievance is a complaint by a Faculty Member or the Union concerning the interpretation and application of the express terms of this Agreement." [Opp. to TRO Motion, Exh. 15 (Faculty CBA) at 51, art. XXIV.A.]

24

The Employer and the Union may, by mutual agreement, waive any or all of the steps and proceed directly to Step 3.

a.  **Step 1.** A grievance shall be filed with the Chancellor or Provost, or the respective designee (herein all referred to as Chancellor or Provost). The Chancellor or Provost shall schedule a grievance meeting with the grievant and/or the grievant's designated representative within fifteen (15) calendar days after receipt of the grievance and shall issue a decision in writing to the grievant within fifteen (15) calendar days after the close of the meeting.

b.  **Step 2.** If the response at Step 1 does not resolve the grievance, the grievant may appeal the Step 1 response by filing an appeal with the President of the University or the President's designee within fifteen (15) calendar days after receipt of the Step 1 response. Such appeal shall be in writing and shall specify the reason why the Step 1 decision is unsatisfactory. The President need not consider any grievance in Step 2 which encompasses different alleged violations or charges than those presented in Step 1. The President or the President's designee shall schedule a grievance meeting with the grievant and/or the grievant's designated representative within fifteen (15) calendar days after receipt of the appeal or grievance is filed and shall render a response in writing to the grievant within twenty (20) calendar days after the close of the meeting.

c.  **Step 3.** Arbitration. If the grievance has not been settled at Step 2, then within thirty (30) calendar days after the receipt of the written decision of the President or the President's designee, the Union may request arbitration by giving written notice to that effect, in person or by registered or certified mail, directed to the President

25

> or the President's designee. Representatives
> of the parties shall attempt to select an
> Arbitrator immediately thereafter.
>
>     . . . .

[Opp. to TRO Motion, Exh. 15 (Faculty CBA) at 51-52 (emphases in

original).]

Defendants point out that Lawson's December 6, 2023

grievance argued the Decision violated Article IX of the Faculty

CBA (Academic Freedom), and his December 7, 2023 grievance

argued the University's investigation discriminated against him,

in violation of Article II (Non-Discrimination). Both grievances

were denied. [Motion, Mem. in Supp. at 11 (citing Opp. to TRO

Motion, Exhs. 29, 30, 33).] Defendants also emphasize Lawson

filed his December 7, 2023 appeal of the Decision pursuant to

EP 1.202, and the appeal was denied. [Id. (citing Opp. to TRO

Motion, Exhs. 31, 32)).]

After the Decision was issued, Teresa Kono and Bruno

both informed Lawson of the procedures available to him under

the Faculty CBA, but Lawson chose not to object to the Decision.

[Id. (citing Opp. to TRO Motion, Exhs. 23, 7, 8).] Therefore,

Bruno's 3/8/24 Letter was issued confirming the suspension

recommended in the Decision. [Id. at 11-12 (citing Opp. to TRO

Motion, Exh. 9).] On March 20, 2024, Lawson filed a step 2

grievance alleging Bruno breached Article XVIII of the Faculty

CBA (Disciplinary Actions). However, he withdrew the Step 2

grievance on April 6, 2024. [Id. at 12 (citing Opp. to TRO Motion, Exhs. 25, 26.] Thus, Lawson did not exhaust the grievance procedures established in the Faculty CBA. The issue before this Court is whether Lawson's failure to do so deprives this Court of jurisdiction over the claims in Lawson's Amended Complaint.

> Prior to bringing suit, an employee seeking to **vindicate personal rights under a collective bargaining agreement** must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement. See United Paperworkers Int'l. Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 37, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute"); DelCostello [v. Int'l Bhd. Of Teamsters], 462 U.S. [151,] 163, 103 S. Ct. 2281 [(1983)] ("Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement" (citations omitted)). Thus, in the ordinary case, an employee's failure to exhaust contractually mandated procedures precludes **judicial relief for breach of the collective bargaining agreement and related claims.**

Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 985–86 (9th Cir. 2007) (emphases added) (footnote omitted).

> Lawson alleges "Defendants were not investigating the complaint through the disciplinary process under the CBA,

27

Article XVIII B, et al.," [Amended Complaint at ¶ 127,] which
suggests that the interpretation and application of the
procedural provisions of the Faculty CBA are at issue in this
case. This allegation, however, appears to be made in the
context of Lawson's description of the history of his disputes
with the University. As noted by Defendants, Lawson has
previously raised challenges under the Faculty CBA that are
based upon the same events that form the basis of his claims in
the instant case. With regard to his current Section 1983
claims, however, Lawson argues exhaustion of the grievance
process under the Faculty CBA is not required, and he expressly
states he is not bringing this action under the CBA. [Id. at
¶¶ 198-99.] Further, Lawson's statement of the counts in the
Amended Complaint does not refer to the Faculty CBA. See id. at
¶¶ 257-347. This Court therefore concludes that the Section 1983
claims which Lawson asserts in the instant case are not based
upon any alleged violation of the Faculty CBA, nor do his claims
require the interpretation or application of the Faculty CBA.
Lawson was not required to exhaust his remedies under the
Faculty CBA before bringing the Section 1983 claims that he
alleges in the Amended Complaint. See Knick v. Twp. of Scott,
588 U.S. 180, 185 (2019) ("The Civil Rights Act of 1871 . . .
guarantees 'a federal forum for claims of unconstitutional
treatment at the hands of state officials,' and the settled rule

28

is that 'exhaustion of state remedies is **not** a prerequisite to an action under [42 U.S.C.] § 1983.'" (emphasis and some alterations in <u>Knick</u>) (some internal quotation marks omitted)).

Defendants' Motion is therefore denied as to their request to dismiss the Amended Complaint for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay and/or Dismiss All Proceedings, filed May 22, 2024, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, August 22, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KENNETH L. LAWSON VS. UNIVERSITY OF HAWAI`I ET AL; CV 24-00172 LEK-RT; ORDER DENYING DEFENDANTS' MOTION TO STAY AND/OR DISMISS ALL PROCEEDINGS**