UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KENNETH L. LAWSON,<br><br>        Plaintiff,<br><br>  vs.<br><br>UNIVERSITY OF HAWAII, DAVID LASSNER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; MICHAEL BRUNO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; CAMILLE NELSON, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; NICHOLAS A. MIRKAY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND JANE/JOHN DOES 1-10, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>        Defendants. | CIV. NO. 24-00172 LEK-RT |

**ORDER DENYING THE PORTION OF PLAINTIFF'S MAY 30, 2024 MOTION SEEKING A PRELIMINARY INJUNCTION, [FILED 5/30/24 (DKT. NO. 44)]**

      On May 30, 2024, pro se Plaintiff Kenneth L. Lawson ("Lawson" or "Plaintiff") filed his Motion for Temporary Restraining Order and Preliminary Injunction. [Dkt. no. 44.] This Court has previously denied the portion of the motion requesting a temporary restraining order. See Minute Order - EO: Court Order: Denying Plaintiff's Motion for an Expedited Hearing on Motion for a TRO/Preliminary Injunction; Denying the Portion of Plaintiff's May 30, 2024 Motion Seeking a Temporary Restraining Order; and Setting a Hearing on the Portion of

Plaintiff's May 30, 2024 Motion Seeking a Preliminary Injunction, filed 6/13/24 (dkt. no. 56) ("6/13 EO"). The potion of Lawson's motion seeking a preliminary injunction will be referred to as the "5/30 Motion."

On August 23, 2024, Defendants University of Hawai`i ("the University"), David Lassner, Michael Bruno, Camille Nelson, and Nicholas Mirkay (collectively "Defendants") filed their opposition to the 5/30 Motion ("Memorandum in Opposition"). [Dkt. no. 78.] On August 30, 2024, Lawson filed his reply in support of the 5/30 Motion ("Reply"). [Dkt. no. 89.] This matter came on for hearing on September 11, 2024. On October 25, 2024, an entering order was issued informing the parties of this Court's rulings on the 5/30 Motion. [Dkt. no. 120.] This Order supersedes that entering order. Lawson's 5/30 Motion is hereby denied for the reasons set forth below.

## BACKGROUND

Lawson initiated this action on April 15, 2024. See generally Verified Complaint ("Complaint"), filed 4/15/24 (dkt. no. 1). The events giving rise to the claims in this case began during a February 17, 2023 faculty meeting ("2/17/23 Meeting") at the University's William S. Richardson School of Law ("WSRSL" or "the law school"), where Lawson is a member of the faculty, and with a February 21, 2023 email that Lawson sent through a WSRSL email listserv calling for a boycott of the event that he

2

criticized during the 2/17/23 Meeting ("2/21/23 Listserv Email"). See, e.g., First Amended Verified Complaint ("Amended Complaint"), filed 5/30/24 (dkt. no. 43), at ¶¶ 2, 16, 66, 91.

Shortly after filing the original Complaint, Lawson filed an Ex Parte Motion for Temporary Restraining Order on April 19, 2024 ("4/19 Motion"). [Dkt. no. 20.] The 4/19 Motion was denied in an order issued on May 3, 2024 ("5/3 Order"). [Dkt. no. 24.[1]]

Along with the Amended Complaint, Lawson filed his Motion for Temporary Restraining Order and Preliminary Injunction, [filed 5/30/24 (dkt. no. 44)]. The Amended Complaint includes new factual allegations. See, e.g., Amended Complaint at ¶¶ 220-30 (allegations regarding events that occurred after the filing of the original Complaint). In addition, the Amended Complaint does not allege some of the claims that were alleged in the original Complaint. Compare Complaint at pgs. 46-65 (alleging Counts I-XI), with Amended Complaint at pgs. 60-78 (alleging eight counts, including two claims identified as Count VII). Because the additional allegations in the Amended Complaint and in Lawson's May 30, 2024 request for a temporary restraining order did not alter the analysis in the 5/3 Order,

---

[1] The 5/3 Order is also available at 2024 WL 1971976.

Lawson's May 30, 2024 request for a temporary restraining order was denied. See 6/13 EO.

Because of the similarities between Lawson's 4/19 Motion and his 5/30 Motion, this Court incorporates the factual background set forth in the 5/3 Order. See 5/3 Order at 2-11. Only events that occurred after the 5/3 Order and prior events that are necessary to the ruling on the 5/30 Motion was issued will be described here.

The 5/30 Motion requests a preliminary injunction requiring:

- the rescission of "the Decision Maker's December 1, 2023, recommendations and the Appeal Hearing Officer's Final and Binding Decision made February 2, 2024";[2] [5/30 Motion at 8;]

- the rescission of the orders by Defendant Michael Bruno, Provost of the University of Hawai`i at Mānoa ("Bruno") "currently banishing" Lawson from the WSRSL campus;[3] [id.;]

---

[2] Dr. Clementina Ceria-Ulep, Dean of the University's nursing school ("Dean Ceria-Ulep"), was designated as the Decision Maker in the University's investigation into Lawson's conduct at the 2/17/23 Meeting and in the 2/21/23 Listserv Email. See 5/30 Motion, Declaration of Kenneth L. Lawson ("Lawson Decl."), Exh. 5 (Dean Ceria-Ulep's letter dated 12/1/23 to Lawson informing him of her decision ("Decision Maker's 12/1/23 Letter")). Dean Ceria-Ulep's decision was upheld by an appeal officer. See id., Exh. 6 (letter dated 2/2/24 to Lawson from Chad Walton, Ph.D. ("2/2/23 Appeal Denial Letter")). On March 8, 2024, Bruno issued a letter informing Lawson that Brno was adopting Dean Ceria-Ulep's decision ("Bruno's 3/8/24 Letter"). See id., Exh. 17 (Bruno's 3/8/24 Letter).

[3] Lawson was initially prohibited from going to the WSRSL campus in Bruno's February 27, 2023 letter that informed Lawson of the investigation into the concerns raised against Lawson
                                              (. . . continued)

4

-an end to the enforcement of the University's "workplace-related policies it claims to be based on allegations of speech and conduct that do not rise to the level of harassment as defined in Policies 9.210, 1.202 and 1.204"; [id.;]

-the lifting of "the unconstitutional no-contact order";[4] [id.;] and

-a prohibition on the imposition of the remainder of Lawson's thirty-day suspension, [id.].

On August 13, 2024, Defendants filed their Status Memorandum regarding the hearing on the 5/30 Motion. [Dkt. no. 72.] Also on August 13, 2024, Lawson filed his Status Memorandum, and he filed a Supplemental Status Memorandum on August 14, 2024. [Dkt. nos. 73, 74.] Lawson stated he "completed the sanctions the Decision Maker imposed in her December 1, 2023 Decision to avoid being terminated or further sanctioned." [Pl.'s Suppl. Status Mem. at 1.] The only restrictions that were still in place at the time of Lawson's filing were "the no-contact order and the prior listserv restraint restrictions." [Pl.'s Status Mem. at PageID.2673.] Based on the 5/30 Motion,

---

("Bruno's 2/27/23 Letter"). See Lawson Decl., Exh. 3 (Bruno's 2/27/23 Letter) at PageID.1428.

[4] Lawson was initially prohibited from contacting Defendant Camille Nelson, the Dean of the law school ("Nelson"); Professor Susan Serrano ("Serrano"); and certain other law school faculty and staff. See Lawson Decl., Exh. 3 (Bruno's 2/27/23 Letter) at PageID.1428. By the time of the 5/3 Order, the no-contact order only remained in effect as to Serrano. See 5/3 Order at 15 & n.5.

5

the parties' status memoranda, and the relevant portions of the record, this Court ruled that the issues at the hearing on the 5/30 Motion would be limited to:

> -whether the order that Lawson not have contact with Professor Susan Serrano ("no-contact order") must be lifted; and
>
> -whether the restrictions on Lawson's use of the law school's listserv must be lifted.

[Minute Order – EO: Regarding the Hearing on the Portion of Plaintiff's May 30, 2024 Motion Seeking a Preliminary Injunction, filed 8/21/24 (dkt. no. 75) ("8/21 EO"), at PageID.2679.]

The parties agreed that the record before this Court in its consideration of the 5/30 Motion would consist of: the declarations and exhibits filed by the parties with the 5/30 Motion, the Memorandum in Opposition, and the Reply; and Bruno's deposition testimony.[5] Thus, during the September 11, 2024 hearing, this Court only heard oral argument from Lawson and Defendants' counsel.

## DISCUSSION

The legal standards applicable to the 5/30 Motion are set forth in the 5/3 Order. See 5/3 Order at 11-13. "'[T]he legal standards applicable to TROs and preliminary injunctions

---

[5] The transcript of the August 30, 2024 Deposition of Michael Bruno ("Bruno Deposition") was filed on September 10, 2024. [Dkt. no. 106.]

are substantially identical.'" [Id. at 12 (some internal quotation marks omitted) (quoting Washington v. Trump, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)).] The preliminary injunction analysis "demands a prospective, not a retrospective, examination of injury" because the moving party "'must demonstrate immediate **threatened** harm.'" Requa v. Kent Sch. Dist. No. 415, 492 F. Supp. 2d 1272, 1281 (W.D. Wash. 2007) (emphasis in Requa) (quoting Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988)).

Bruno's 3/8/24 Letter stated:

I am also adopting the recommendation for corrective action as outlined in Dean Ceria-Ulep's December 1, 2023 decision:

- You will be suspended for one-month without pay;

- You are directed to attend mandatory one-on-one training with the Office of the Vice Provost for Academic Excellence (OVPAE) and System Office of Human Resources (OHR) on EP 9.210, the University's Workplace Non-Violence Policy

- You are directed to attend mandatory training with the Equity Assurance Office (EAO) on both EP 1.202, Nondiscrimination, Equal Opportunity and Affirmative Action and EP 1.204, Sex and Gender Based Misconduct; and

- You are directed to attend five (5) mandatory anger management training sessions to provide you with the tools and resources to engage in conversations in a collegial manner.

7

[Lawson Decl., Exh. 17 (Bruno's 3/8/24 Letter) at PageID.1533.] Lawson was informed that, "[u]pon completion of the suspension and mandatory trainings, [he would] be allowed to resume [his] functions at the WSRSL campus," but the no-contact order regarding Serrano would "remain in place and [would] be revisited as necessary. [Id. at PageID.1533-34.]

I. **Exclusion from Campus and Suspension**

Because Lawson has completed the sanctions recommended in the Decision Maker's 12/1/23 Letter and adopted in Bruno's 3/8/24 Letter, including his suspension, he is no longer excluded from the WSRSL campus. Thus, the exclusion from the WSRSL campus and the thirty-day suspension are no longer threatened harms. Lawson may ultimately establish that his rights were violated during the investigation and/or decision-making process, but his remedy is to obtain an award of damages or other retrospective relief for his past injury. See Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014) ("Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." (citation omitted)). A preliminary injunction therefore is not available as a remedy to address Lawson's exclusion from campus and his suspension.

## II. No-Contact Order

Similarly, the no-contact order regarding Serrano is no longer in effect. Based upon Dean Ceria-Ulep's findings and decision in the Decision Maker's 12/1/23 Letter, Theresa Kono ("Kono") asked Nelson and Serrano whether they wanted the no-contact order to be extended. Nelson responded that she did not, but Serrano informed Kono that she wanted it to be extended because of her ongoing concerns about Lawson. Kono communicated this to Bruno, and he included the continuing no-contact order as to Serrano in Bruno's 3/8/24 Letter. [Mem. in Opp., Declaration of Theresa Kono ("Kono Decl.") at ¶¶ 10-13.[6]] On August 22, 2024, Serrano contacted Kono to ask that the no-contact order be rescinded. Id. at ¶ 14; see also Mem. in Opp., Declaration of Susan Serrano ("Serrano Decl.") at ¶ 41. Kono communicated Serrano's request to Bruno. [Kono Decl. at ¶ 15.] Bruno sent Lawson a letter, dated August 23, 2024, informing him that the no-contact order was rescinded. [Mem. in Opp., Declaration of Michael S. Bruno ("Bruno Decl."), Exh. 6.] Lawson has not disputed that he received the August 23, 2024 letter.

A preliminary injunction therefore is not available as a remedy to address the merits of the now rescinded no-contact

---

[6] Kono is the Director of Faculty Excellence for the University of Hawai`i at Mānoa. Kono's position is within the Office of the Vice Provost for Academic Excellence. [Kono Decl. at ¶ 1.]

order. If Lawson ultimately establishes that the no-contact order, at any time, violated his constitutional rights, Lawson's remedy is to obtain an award of damages or other retrospective relief.

**III. Listserv Restrictions**

Bruno's 2/27/23 Letter informed Lawson that he would "not be allowed to send out any email communications utilizing WSRSL's listservs without prior approval." [Lawson Decl., Exh. 3 (Bruno's 2/27/23 Letter) at PageID.1428.] Lawson argues this restriction is still in place and that it is being imposed upon him in violation of his constitutional rights. See 5/30 Motion at 2-3; id., Mem. in Supp. at 6. Based on the evidence and arguments presented by the parties, WSRSL maintains multiple email listservs, including, but not limited to, a student listserv, a faculty listserv, a staff listserv, an alumni listserv, and listservs that combine other listservs. See, e.g., Mem. in Opp., Declaration of Nicholas A. Mirkay III ("Mirkay Decl.") at ¶ 7 (discussing the student listserv, faculty listserv, and staff listserv).[7]

**A.   Lawson's Access to the Student Listserv**

Following the 2/17/23 Meeting and Lawson's 2/21/Listserv Email, the Office of the Vice Provost for Academic

---

[7] Mirkay is WSRSL's Associate Dean for Academic Affairs, and his also a Professor of Law. [Mirkay Decl. at ¶ 1.]

10

Excellence contacted the deans of the other professional schools at the University of Hawai`i at Mānoa to inquire whether a school's faculty had the ability to email all students through a listserv. It was determined that the standard practice was to have faculty go through a moderator to utilize a listserv of all of the professional school's students. See id. at ¶¶ 8-9.

Around that time, Mirkay also learned that University Information Technology Services ("ITS") policy required that "listservs . . . be used only for administrative or academic purposes and not for the furtherance of a person's self-interest." [Id. at ¶ 10.] On February 23, 2023, Mirkay instructed Benny Au, Director of WSRSL's ITS ("Au"), to remove all WSRSL faculty from "the student listserv to (1) prevent any faculty from abusing the listserv to further their own self-interest and (2) to prevent Kenneth Lawson from any accidental contact with the seven faculty members with whom he would be directed not to have any contact." [Id. at ¶ 11.] On February 24, 2023, Au confirmed that he had done so. [Id. at ¶ 12.] Mirkay states that, "after February 24, 2023, no WSRSL faculty could use the WSRSL student listserv without pre-approval by [Mirkay]." [Id. at ¶ 14.] Thus, it is undisputed that Lawson is under a current restriction that he cannot send an email to the student listserv without prior approval.

Lawson argues the purportedly faculty-wide restriction on the use of the student listserv is pretext, and he contends his use of the student listserv is being restricted because of the content of his speech and in retaliation for his prior speech and for his protected activities. He cites as evidence examples of "emails and attachments that have been sent via the WSRSL listserv by various faculty members over the last several years where faculty members have discussed issues of public concern such as racism, protests, politics, this lawsuit and the pending investigation against [Lawson]." [Lawson Decl. at ¶ 116 (discussing Exhibits 19, 20, and 21).] First, Exhibits 19 and 20 do not support Lawson's position because they pre-date the requirement that all WSRSL faculty obtain Mirkay's approval to utilize the student listserv. See Lawson Decl., Exh. 19 (email chain dated 1/13/17 between faulty members and the **faculty** listserv); id., Exh. 20 (email dated 1/6/21 sent on Nelson's behalf to the student listserv and what appears to be a listserv of both faculty and staff).

Lawson argues that, in May 2024, he sought permission to use the student listserv to explain to the students who had requested his presence at the commencement ceremony why he would not be attending, but Bruno denied the request because the use was inconsistent with University policy that University listservs only be used for institutional purposes. [5/3 Motion

at 2-3.] Lawson argues the explanation was pretextual and that the purported policy only applies to him. To support his position, Lawson cites a May 10, 2024 incident in which a "WSRSL professor sent an email using the WSRSL listserv inquiring whether anyone had a car for rent." [Id. at 3.] However, Lawson has not submitted a copy of this email and, even accepting Lawson's description of the email, he has not established that the email was sent to the student listserv.

Lawson also argues Nelson "utilized the listserv to discredit [Lawson's] pending lawsuit and to gaslight the email recipients into believing that the pending investigation into [Lawson] is being done fairly." [Lawson Decl. at ¶ 69.] This argument appears to refer to Lawson's Exhibit 21, an August 24, 2023 email from Nelson to the student listserv, the faculty listserv, and the staff listserv, welcoming them to the Fall 2023 semester ("Nelson's 8/24/23 Email"). [Dkt. no. 44-23.] The email stated, in relevant part:

> There is a matter that I need to briefly address. Many of you may have read or heard about the August 23rd Civil Beat story on a lawsuit filed against the university and members of the law school community.[8] As the article noted and as

---

[8] This apparently refers to Lawson v. University of Hawai`i et al., CV 23-00348 LEK-RT ("CV 23-348"), which was filed in this district court on August 21, 2023. Lawson subsequently dismissed CV 23-348. [CV 23-348, Notice of Voluntary Dismissal Without Prejudice Pursuant to F.R.C.P. 41(a)(1)(A)(i), filed 4/15/24 (dkt. no. 68).] Lawson filed the instant case on the
(. . . continued)

13

> the lawsuit states, there is also a pending University personnel investigation, and I have been advised, and as students of the law and people committed to the rule of law you understand, to allow the legal processes to proceed in due course, and not to discuss the investigation or lawsuit in detail. However, I am confident that this situation will be resolved in time, and that our Richardson community will emerge stronger than ever, as long as we continue our focus on serving our students and our community.
>
> I write to reaffirm the law school's longstanding commitment to being a collaborative, inclusive, multicultural community that embraces Hawai`i's diversity and values. We take community and `ohana seriously and have extensive anti-discrimination policies, which include race, sex, gender identity and expression, age, religion, color, national origin, ancestry, citizenship, disability, genetic information, marital status, breastfeeding, income assignment for child support, arrest, and court record (except as permissible under State law), sexual orientation, national guard absence, or status as a covered veteran. We embrace open and respectful discourse and interactions and remain faithful to the values, behaviors, and practices that bring us together and build community, instead of those interactions that would tear us apart.

[Lawson Decl., Exh. 21 (Nelson's 8/24/23 Email) at PageID.1545-46.] Nelson's 8/24/23 Email and its discussion of Lawson's lawsuit served an institutional purpose, to provide reassurances to the law school community as a whole. Nelson's 8/24/23 Email

---

same day that he dismissed CV 23-348. [Verified Complaint, filed 4/15/24 (dkt. no. 1).] Lawson has referred to the instant case as "a continuation" of CV 23-348. See Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay and/or Dismiss All Proceedings, filed 6/17/24 (dkt. no. 59), at 11.

14

did not discuss details regarding the investigation or the lawsuit, and contrary to Lawson's interpretation, the email did not attempt to discredit his lawsuit or to convey information about the progress of the personnel information.

In addition, Defendants have presented evidence that Lawson, in his capacity as the co-director of the Hawai`i Innocence Project, still has the ability to use the student listserv without preapproval by sending an email from the Hawai`i Innocence Project's email account. See Mirkay Decl. at ¶¶ 15, 19, 23. Lawson has not presented any evidence contradicting Mirkay's testimony about the Lawson's ability to use the Hawai`i Innocence Project's email account to use the student listserv.

The evidence that Lawson has presented does not show that he is likely to succeed on the merits of his claim that the restrictions on his access to the WSRSL student listserv are either content-based discrimination or retaliation for protected activity. Because Lawson has not established a likelihood of success on the merits, it is not necessary to address the other requirements for a preliminary injunction. See 5/3 Order at 12 ("A party moving for preliminary injunctive relief must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) that the balance of harm tips in the movant's favor, **and** (4) that the injunction is in

15

the public interest." (emphasis added) (some citations omitted) (quoting Chamber of Com. of the U.S. v. Bonta, 62 F.4th 473, 481 (9th Cir. 2023))). Further, even under the "sliding scale" approach, the evidence Lawson has presented does not raise a serious question going to the merits of his claim that the restrictions on his access to the WSRSL student listserv are either discrimination or retaliation.

Lawson therefore is not entitled to a preliminary injunction requiring Defendants to lift the restrictions on Lawson's use of the WSRSL student listserv.

**B.   Other Listservs**

Mirkay states that the February 24, 2023 restriction requiring all faculty to obtain preapproval from Mirkay before using the student listserv did not affect Lawson's access to the WSRSL faculty listserv and the staff listserv. See Mirkay Decl. at ¶ 15. On April 3, 2024, Lawson asked Mirkay to confirm that, in light of Bruno's 3/8/24 Letter and an April 2024 letter that is not part of the record before this Court, Lawson was "allowed to post announcements on the listserv again." [Mirkay Decl., Exh. 5 at PageID.2791 (4/3/24 email from Lawson to Mirkay).] On April 10, 2024, Mirkay informed Lawson that Lawson had "permission to use the listservs without obtaining prior approval," but Mirkay reminded Lawson that "individual faculty

16

members do not have access to the student listserv directly." [Id. at PageID.2793 (4/10/24 email from Mirkay to Lawson).]

Because the restrictions on Lawson's access to the non-student listservs are no longer in effect, a preliminary injunction is not available as a remedy to address the merits of the prior restrictions. If Lawson ultimately establishes that the prior restrictions violated his constitutional rights, Lawson's remedy is to obtain an award of damages or other retrospective relief.

**IV.    Recission of the Decision Maker's 12/1/23 Letter**

All of the disciplinary actions in the Decision Maker's 12/1/23 Letter, which were affirmed in the 2/2/23 Appeal Denial Letter and adopted in Bruno's 3/8/24 Letter, have either been completed by Lawson or rescinded by the University. Thus, the Decision Maker's 12/1/23 Letter does not present an ongoing, threatened harm to Lawson, and he cannot obtain a preliminary injunction addressing the merits of the decision. If Lawson ultimately establishes that the decision violated his constitutional rights, Lawson's remedy is to obtain an award of damages or other retrospective relief.

**V.    Lawson's Challenge to University Policies**

Finally, the 5/30 Motion seeks an injunction against the enforcement of the University's "workplace-related policies it claims to be based on allegations of speech and conduct that

do not rise to the level of harassment as defined in Policies 9.210, 1.202 and 1.204." [5/30 Motion at 8.] Lawson argues the University's "policies are facially unconstitutional, or at least unconstitutional as-applied to Plaintiff," and "Defendants should be enjoined from weaponizing [the University's] policies to silence Plaintiff's speech on matters of public concern." [Pl.'s Suppl. Status Mem. at 2.]

The claims in this case include Title 42 United States Code Section 1983 claims asserting facial and as-applied challenges to the University's Executive Policy ("EP") 1.202 and EP 9.210. See Amended Complaint at ¶¶ 298-325 (Counts V and VI). Although Lawson does not cite EP 1.204 in any specific count, the Amended Complaint alleges: "Despite finding that Professor Lawson did not violate EP 1.204, (Title IX) Dean Ceria-Ulep recommended Professor Lawson be sanctioned with mandatory Title IX training on EP 1.204." [Id. at ¶ 191.] Thus, the only challenge to EP 1.204 in the Amended Complaint appears to be to the EP 1.204 training recommend in the Decision Maker's 12/1/23 Letter and ultimately adopted in Bruno's 3/8/24 Letter. This Court has already ruled that, because Lawson has completed all of the disciplinary actions in the Decision Maker's 12/1/23 Letter, he cannot obtain a preliminary injunction addressing the merits of any challenge to that decision, including the EP 1.204 training requirement.

18

The materials that Lawson submitted with the 5/30 Motion arguably raise issues of fact regarding whether EP 1.202 and EP 9.210 were unconstitutionally applied to him during the investigation and disciplinary process at issue in this case. However, the materials do not establish anything that constitutes an immediate, or imminent, threat of harm to Lawson from the application of EP 1.202 or EP 9.210. Accord 5/3 Order at 16-17 (finding that Lawson failed to establish that he is suffering irreparable harm because Lawson's future exercise and content of speech was not suppressed). Lawson therefore cannot obtain a preliminary injunction regarding his challenges to EP 1.202 and EP 9.210. If Lawson ultimately establishes that one or both of these policies were unconstitutionally applied to him, Lawson's remedy is to obtain an award of damages or other retrospective relief.

## CONCLUSION

For the foregoing reasons, the portion of Lawson's Motion for Temporary Restraining Order and Preliminary Injunction, filed May 30, 2024, requesting a preliminary injunction is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 21, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**KENNETH L. LAWSON VS. UNIVERSITY OF HAWAII, ET AL.; CV 24-00172 LEK-RT; ORDER DENYING THE PORTION OF PLAINTIFF'S MAY 30, 2024 MOTION SEEKING A PRELIMINARY INJUNCTION, [FILED 5/30/24, (DKT. NO. 44)]**