UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

KENNETH L. LAWSON,

          Plaintiff,

   vs.

UNIVERSITY OF HAWAII, DAVID
LASSNER, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; MICHAEL
BRUNO, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; CAMILLE
NELSON, IN HER OFFICIAL AND
INDIVIDUAL CAPACITIES; NICHOLAS
A. MIRKAY, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES; AND
JANE/JOHN DOES 1-10, IN THEIR
OFFICIAL AND INDIVIDUAL
CAPACITIES;

          Defendants.

CIV. NO. 24-00172 LEK-RT

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF
<u>PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT [DKT. 43]</u>**

On June 13, 2024, Defendants University of Hawai`i ("the University"), David Lassner ("Lassner"), Michael Bruno ("Bruno"), Camille Nelson ("Nelson"), and Nicholas Mirkay ("Mirkay" and collectively "Defendants") filed their Motion for Partial Dismissal of Plaintiff's First Amended Verified Complaint [Dkt. 43] ("Motion"). [Dkt. no. 57.] Pro se Plaintiff Kenneth L. Lawson ("Lawson") filed his memorandum in opposition on September 6, 2024, and Defendants filed their reply on September 20, 2024. [Dkt. nos. 99, 112.] The Court finds this

matter suitable for disposition without a hearing pursuant to
Rule LR7.1(c) of the Local Rules of Practice for the United
States District Court for the District of Hawaii ("Local
Rules"). Defendants' Motion is hereby granted in part and denied
in part for the reasons set forth below.

Specifically, the Motion is granted insofar as the
following claims are dismissed without leave to amend: all of
Lawson's claims against the University; and Lawson's claims
against Lassner, Bruno, Nelson, and Mirkay (collectively "the
Individual Defendants") in their official capacities seeking the
declaratory relief described in paragraph 5 of the Amended
Complaint. The Motion is granted in part and denied in part
insofar as the following claims are dismissed with leave to
amend: Lawson's Fourteenth Amendment procedural due process
claim against Lassner; and Lawson's neglect to prevent civil
rights violations claim against the Individual Defendants in
their individual capacities. The Motion is denied in all other
respects. Lawson is granted leave to file a second amended
complaint, with the limited amendments described in this Order,
by **March 3, 2025.**

## BACKGROUND

Lawson filed this action on April 15, 2024. See
Verified Complaint, filed 4/15/24 (dkt. no. 1) ("Complaint").
The operative pleading is Lawson's First Amended Verified

Complaint, filed on May 30, 2024 ("Amended Complaint"). [Dkt. no. 43.]

The events giving rise to the claims in this case began during a February 17, 2023 faculty meeting ("2/17/23 Meeting") at the University's William S. Richardson School of Law ("WSRSL"), where Lawson is a member of the faculty. See, e.g., Amended Complaint at ¶¶ 2, 16, 66. According to Lawson, he "is presently the only self-identified Black American-born male employee on the WSRSL faculty." [Id. at ¶ 16.] During the 2/17/23 Meeting, which was presided over by Nelson,[1] Lawson expressed his objections to the scheduled February 23, 2023 Black History Month event that was planned by WSRSL's Diversity, Equity, and Inclusion committee ("the Event"). See id. at ¶¶ 61-75. Other persons present at the 2/17/23 Meeting complained that Lawson was disruptive, intimidating, and threatening when speaking about the Event, but Lawson denies their allegations. See, e.g., id. at ¶¶ 76-79, 86-89.

On February 21, 2023, Lawson used the WSRSL email listserv to send an email calling for a boycott of the Event ("2/21/23 Listserv Email"). [Id. at ¶ 91.]

On February 27, 2023, Bruno, who is the University Provost, sent Lawson a notice stating an investigation would be

---

[1] Nelson is the Dean of WSRSL. [Amended Complaint at ¶ 12.]

conducted to determine whether Lawson's conduct at the 2/17/23
Meeting and his 2/21/23 Listserv Email created a hostile work
environment. [Id. at ¶¶ 11, 124.] Pending the completion of the
investigation, Bruno banned Lawson from the WSRSL campus,
restricted Lawson's use of the WSRSL listserv, and ordered
Lawson not to have contact with certain WSRSL personnel ("no-
contact orders"). [Id. at ¶ 125.]

An investigation and decision-making process followed,
and the restrictions that Bruno imposed in the February 23, 2023
notice remained in place. See id. at ¶¶ 126-38. On December 1,
2023, Lawson received the decision by Dean Clementina Ceria-Ulep
of the University's School of Nursing ("Decision" and "Dean
Ceria-Ulep"). See id. at ¶¶ 139-41. Dean Ceria-Ulep found that
some of the allegations that were made against Lawson were not
supported, but Dean Ceria-Ulep found that others were supported.
Dean Ceria-Ulep concluded that Lawson violated the University's
Executive Policy ("EP") 9.210. See id. at ¶¶ 148-78. The
Decision recommended that certain disciplinary actions be taken
against Lawson, and Lawson argues these actions were more severe
than those taken against other University faculty members who
were found to have committed similar policy violations. See id.
at ¶¶ 188-90. A grievance and appeal process followed, with an
appeal officer upholding the Decision. See id. at ¶¶ 192-95.

4

In a letter dated March 8, 2024, Bruno informed Lawson that he was adopting the disciplinary actions described in the Decision and that he was imposing additional sanctions ("Bruno's 3/8/24 Letter"). [Id. at ¶¶ 200-01.] Lawson alleges Bruno's 3/8/24 Letter constituted retaliation against Lawson because it threatened further disciplinary action, including termination, if Lawson engages in further protests against anti-Black racism. [Id. at ¶ 203.]

Lawson claims there were false allegations made in the interview statements that Dean Ceria-Ulep relied upon in the Decision. [Id. at ¶¶ 205-17.] Lawson also alleges various events that occurred during the eight months before the filing of the Amended Complaint show that the safety concerns which were the purported basis for the adverse actions taken against him were a pretext for retaliation. [Id. at ¶¶ 218-38.]

Lawson asserts the following claims: a Title 42 United States Code Section 1983 claim alleging viewpoint discrimination, in violation of the First Amendment, against Nelson, Bruno, and Mirkay,[2] in their individual capacities ("Count I"); a Section 1983 claim alleging First Amendment retaliation against Nelson, Bruno, and Mirkay, in their

---

[2] Mirkay is the Associate Dean of WSRSL. [Amended Complaint at ¶ 13.]

individual capacities ("Count II"); a Section 1983 claim
alleging First Amendment retaliation against Lassner,[3] Nelson,
Bruno, and Mirkay, in their official capacities ("Count III"); a
Section 1983 claim alleging prior restraint of his First
Amendment rights against Lassner and Bruno, in their official
capacities ("Count IV"); a Section 1983 claim against Lassner
and Bruno, in their official capacities, asserting a facial and
as-applied challenge to EP 1.202 ("Count V"); a Section 1983
claim against Lassner and Bruno, in their official capacities,
asserting a facial and as-applied challenge to EP 9.210
("Count VI"); a Section 1983 claim alleging violations of
Lawson's Fourteenth Amendment procedural due process rights,
against the Individual Defendants in their individual capacities
("Count VII"); and a Title 42 United States Code Section 1986
claim alleging neglect to prevent civil rights violations,
against the Individual Defendants in their individual capacities
("Count VIII").[4] [Id. at pgs. 60-78.]

        Lawson prays for the following relief: a temporary
restraining order and a preliminary injunction; a permanent
injunction; a declaratory judgment; special and general damages;

---

[3] Lassner is the President of the University. [Amended
Complaint at ¶ 10.]

[4] The Section 1986 claim appears to have been inadvertently
misnumbered as a second "Count VII." See Amended Complaint at
pg. 77.

[id. at ¶¶ 348-54;] "[c]ompensatory damages against all
Defendants sued in their individual capacities"; [id. at ¶ 355;]
"[p]unitive damages against all Defendants in their individual
capacities"; [id. at ¶ 356;] attorney's fees and costs;
prejudgment and post-judgment interest; and any other
appropriate relief, [id. at ¶¶ 357-58].

      In the instant Motion, Defendants argue: all of
Lawson's claims for monetary damages against the University or
against the Individual Defendants in their official capacities
are barred by the Eleventh Amendment; Lawson's requests for
declaratory relief against the University and the Individual
Defendants in their official capacities are barred by the
Eleventh Amendment; Lawson's Section 1983 claims against the
Individual Defendants are insufficiently pled; and Lawson's
Section 1986 claims against the Individual Defendants fail as a
matter of law. [Motion at 1.] Although not clearly stated in the
Motion, Defendants' Reply clarifies that Defendants argue Lawson
should not be granted leave to amend any dismissed claims. See
Reply at 3 n.2.

## DISCUSSION

I.   **Eleventh Amendment**

    A.   **The University**

      "The ultimate guarantee of the Eleventh Amendment is
that nonconsenting States may not be sued by private individuals

in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531

U.S. 356, 363 (2001) (citation omitted); see also U.S. Const.,

amend. XI ("The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign

State."). "It is well established that agencies of the state are

immune under the Eleventh Amendment from private damages or

suits for injunctive relief brought in federal court." Sato v.

Orange Cnty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir. 2017)

(citation and quotation marks omitted); see also P.R. Aqueduct &

Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993)

("Absent waiver, neither a State nor agencies acting under its

control may be subject to suit in federal court." (citations and

internal quotation marks omitted)). As such, "[s]tates, their

agencies, and their officials in their official capacities are

immune from damage suits under state or federal law by private

parties in federal court unless there is a valid abrogation of

that immunity or an unequivocal express waiver by the state."

Monet v. Hawai`i, Civ. No. 11-00211 SOM/RLP, 2011 WL 2446310, at

*4 (D. Hawai`i June 14, 2011) (some citations omitted) (citing

Sossamon v. Tex., 131 S. Ct. 1651, 1658 (2011)). "A state

generally waives its immunity when it voluntarily invokes

[federal] jurisdiction or . . . makes a 'clear declaration' that

it intends to submit itself to [federal] jurisdiction." In re
Bliemeister, 296 F.3d 858, 861 (9th Cir. 2002) (alterations in
Bliemeister) (citation and internal quotation marks omitted).

Lawson does not dispute that the University is a state
agency. The State of Hawai`i has not waived its sovereign
immunity from Section 1983 claims generally, and Congress did
not abrogate state sovereign immunity when it enacted
Section 1983. See, e.g., Sheikh v. Hawai`i Dep't of Hum. Servs.,
Civil No. 12-00701 DKW-BMK, 2014 WL 1322496, at *2 (D. Hawai`i
Mar. 31, 2014) (citing Will v. Mich. Dep't of State Police, 491
U.S. 58, 65-66 (1989)). Further, the University has not waived
its sovereign immunity in this case.

Because there has been neither a valid abrogation of
the University's Eleventh Amendment immunity nor a waiver by the
University, any claim that Lawson is attempting to assert
against the University in the Amended Complaint is barred by the
University's Eleventh Amendment immunity. Lawson therefore fails
to state a plausible claim for relief against the University,
and any claims against the University must be dismissed. See
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a
motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to state a claim to relief that is
plausible on its face." (citation and internal quotation marks
omitted)). The dismissal is without leave to amend because

Lawson cannot avoid the University's Eleventh Amendment immunity by amending the allegations in another version of the complaint. See Lund v. Cowan, 5 F.4th 964, 973 (9th Cir. 2021) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." (citation and quotation marks omitted)).[5]

Defendants' Motion is therefore granted as to Lawson's claims against the University.

B.    **The Individual Defendants in Their Official Capacities**

Under the Ex parte Young exception to Eleventh Amendment immunity, however, "private individuals may sue state officials in federal court for prospective relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity." Koala v. Khosla, 931 F.3d 887, 895 (9th Cir. 2019) (citing Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254-55 (2011)); see also Ex parte Young, 209 U.S. 123 (1908). Ex parte Young is based on the proposition "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." Va. Office for Prot. & Advocacy, 563 U.S. at 255 (citation omitted).

In determining whether the Ex parte Young doctrine avoids an Eleventh Amendment

_____

[5] Lawson could cure the defect in his claims against the University if the University subsequently waives its Eleventh Amendment immunity. Because there is no indication that the University will do so, if a waiver occurs in the future and Lawson wishes to pursue claims against the University, Lawson must file a motion to amend his operative complaint in this case or he must file a new action.

> bar to suit, a court conducts a
> "straightforward inquiry" into whether the
> complaint (1) alleges an ongoing violation
> of federal law, and (2) seeks relief
> properly characterized as prospective.
> Verizon Md., Inc. v. Pub. Serv. Comm'n of
> Md., 535 U.S. 635, 645 (2002) (quoting Idaho
> v. Coeur d'Alene Tribe of Idaho, 521 U.S.
> 261, 296 (1997) (O'Connor, J., joined by
> Scalia and Thomas, JJ., concurring in part
> and concurring in judgment); 521 U.S. at
> 298-299 (Souter, J., joined by Stevens,
> Ginsburg, and Breyer, JJ.,
> dissenting)). . . .
>
> Duke's Invs. LLC v. Char, CIVIL NO. 22-00385 JAO-
> RT, 2023 WL 3166729, at *6 (D. Hawai`i Apr. 28,
> 2023).
>
> Further, under Ex parte Young, the state
> officer "'must have some connection with
> enforcement of the act.'" Coal. to Defend
> Affirmative Action v. Brown, 674 F.3d 1128, 1134
> (9th Cir. 2012) (quoting Ex parte Young, 209 U.S.
> at 157, 28 S. Ct. 441). The connection
> requirement is a modest one, and "demands merely
> that the implicated state official have a
> relevant role that goes beyond 'a generalized
> duty to enforce state law or general supervisory
> power over the persons responsible for enforcing
> the challenged provision.'" Mecinas v. Hobbs, 30
> F.4th 890, 903-04 (9th Cir. 2022) (quoting
> Planned Parenthood of Idaho, Inc. v. Wasden, 376
> F.3d 908, 919 (9th Cir. 2004)).

Helicopter Ass'n Int'l v. Hawai`i, CIV. NO. 23-00083 LEK-WRP,

2023 WL 6850157, at *5 (D. Hawai`i Oct. 17, 2023) (alterations

in Helicopter Ass'n).

Lawson seeks declaratory and injunctive relief against

the Individual Defendants in their official capacities; he does

not seek monetary relief against them. [Mem. in Opp. at 2.]

11

Specifically, he seeks a declaratory judgment that the
University policies at issue in this case, which are currently
in effect, are unconstitutional to the extent that these
policies restrict protected speech. [Id. at 2-3.]

### 1.    Request to Dismiss Claims for Monetary Relief

Count III is alleged against the Individual Defendants
in their official capacities, [Amended Complaint at pg. 66,] and
it expressly seeks only injunctive relief, [id. at ¶ 287].
Counts IV, V, and VI are alleged against Lassner and Bruno in
their official capacities, [id. at pgs. 66, 68, 71]. Counts IV,
V, and VI seek only injunctive relief. [Id. at ¶¶ 297, 311,
325.] The only counts seeking damages are counts alleged against
some or all of the Individual Defendants in their individual
capacities. See id. at ¶¶ 271 (Count I) 283 (Count II), 340
(Count VII), 347 (Count VIII). Said another way, the Amended
Complaint does not assert claims for damages against the
Individual Defendants in their official capacities.[6] Defendants'

---

[6] The prayer for relief section of the Amended Complaint
could arguably be construed as including a request for damages
against the Individual Defendants in their official capacities.
Lawson's prayer for compensatory damages and his prayer for
punitive damages are expressly asserted against all defendants
in their individual capacities. See Amended Complaint at ¶¶ 355-
56. Lawson's prayer for special damages and his prayer for
general damages does not include that limitation, see id. at
¶¶ 353-54, which could suggest that he seeks special damages and
general damages against the Individual Defendants in both their
individual capacities and their official capacities. However,
(. . . continued)

Motion is therefore denied as to the request to dismiss claims for monetary relief against the Individual Defendants in their official capacities because monetary damages are not asserted.

> ### 2.    <u>Request to Dismiss Claims for Declaratory Relief</u>

Defendants acknowledge the Eleventh Amendment does not bar claims against state officials in their official capacities for prospective declaratory or injunctive relief to stop ongoing violations of federal law. [Motion, Mem. in Supp. at 6 (citing <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. at 58, 71, n.10).] Defendants argue that, to the extent Lawson seeks declaratory relief regarding the investigation and decision-making process that has been completed, the request seeks retrospective relief that is barred by the Eleventh Amendment. [<u>Id.</u> at 7.] Lawson, however, states that he does not seek to undo the investigation and the Decision but only seeks prospective relief declaring current University policies unconstitutional. <u>See</u> Mem. in Opp. at 2.

Lawson describes the declaratory relief he seeks as follows:

> Because the threat of future investigations and discipline has a chilling effect on Professor Lawson's [sic], a declaration that Professor Lawson can continue to use his history in the US Black Civil Rights movement to teach and lecture on Fourth Amendment and civil rights violations

the express limitations to injunctive relief in Counts III through VI, [<u>id.</u> at ¶¶ 287, 297, 311, 325,] controls.

13

> and the threat of future investigations and
> discipline against him for his constitutionally
> protected speech violates his First Amendment
> rights to freedom of speech and academic freedom.

[Id. at ¶ 352.] While not the model of clarity, paragraph 352
apparently seeks a declaratory judgment: that Lawson may cite
his history in the United States Black Civil Rights movement
when he teaches and/or lectures about the Fourth Amendment
and/or civil rights violations; that his citation of his
experiences constitutes speech protected by the First Amendment
and by his academic freedom; and that he will not be threatened
with future investigations or disciplinary actions for citing
his experiences. Paragraph 352 seeks prospective declaratory
relief, and, under Ex parte Young, Lawson may seek such relief
against the Individual Defendants in their official capacities.
Defendants' Motion is denied to the extent that it seeks to
dismiss Lawson's claims seeking the declaratory relief described
in paragraph 352 of the Amended Complaint.

However, the Amended Complaint's Jurisdiction and
Venue section also states Lawson "seeks declaratory and
emergency, preliminary and permanent injunctive relief against
the official-capacity Defendants and a ruling that Defendants
both violated Professor Lawson's right to free speech and
unconstitutionally retaliated against Professor Lawson for
expressing unpopular views on matters of public concern."

[Amended Complaint at ¶ 5.] Paragraph 5 describes a retrospective declaratory judgment which would state that the Individual Defendants in their official capacities violated Lawson's right to free speech and that they retaliated against him. The Individual Defendants in their official capacities have Eleventh Amendment immunity from Lawson's claims seeking the declaratory relief described in paragraph 5 of the Amended Complaint. Those claims are dismissed, and the dismissal is without leave to amend because Lawson cannot cure the defect in those claims by amending his allegations.[7]

Defendants' Motion is granted to the extent that it seeks to dismiss Lawson's claims seeking the declaratory relief described in paragraph 5 of the Amended Complaint.

## II.  <u>Section 1983 Claims Against the Individual Defendants</u>

The elements of a Section 1983 claim are: "(1) a person acting under color of State law; (2) subjects or causes to be subjected to deprivation; (3) a U.S. citizen or person in the jurisdiction of the United States; (4) of a right, privilege, or immunity secured by the Constitution and laws." <u>Chaudhry v. Aragón</u>, 68 F.4th 1161, 1169 & n.9 (9th Cir. 2023).

---

[7] As with Lawson's claims against the University, if the Individual Defendants in their official capacities waive their Eleventh Amendment immunity and Lawson wants to seek the declaratory judgment described in paragraph 5 of the Amended Complaint, he must either file a motion for leave to amend his operative pleading or he must file a new action.

The Individual Defendants' alleged actions and omissions at issue in this case occurred in the context of their employment as University officials. See, e.g., Amended Complaint at ¶¶ 10-13. Lawson states he is "a citizen of the United States and resident of the City and County of Honolulu, State of Hawaii. Lawson's race is Black, and he is part of a protected class for purposes of 42 U.S.C. §1983 et. seq. civil rights laws." [Id. at ¶ 8.] Thus, the first and third elements of Lawson's Section 1983 claims are adequately alleged for purposes of Counts I, II, and VIII.

Ultimately, to establish the second element, Lawson will be required to

> ["]demonstrate that the defendant's conduct was the actionable cause of the claimed injury." Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). Such causation "can be established" either "by some kind of direct personal participation in the deprivation" or "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1044 (9th Cir. 1994) (quoting Merritt v. Mackey, 827 F.2d 1368, 1371 (9th Cir. 1987)). "To meet [§ 1983's] causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Harper, 533 F.3d at 1026 (footnotes not in original). "Without [such] caus[ation], there is no section 1983 liability." Van Ort v. Est. of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

See Chaudhry, 68 F.4th at 1169-70 (some alterations in Chaudhry) (footnotes omitted).

16

**A.    Counts I and II – First Amendment Claims**

Count I, Lawson's First Amendment content and
viewpoint discrimination claim, is alleged against Nelson,
Mirkay, and Bruno in their individual capacities. [Amended
Complaint at pg. 60.] Count I alleges: that Nelson, Mirkay, and
Bruno were part of the investigation into Lawson's conduct
during the 2/17/23 Meeting and in the 2/21/23 Listserv Email;
and that the investigation was initiated "on the basis of
[Lawson's] dissenting viewpoint on issues of public concern."
[Id. at ¶ 261.] As noted *supra*, the investigation resulted in
the Decision, which recommended disciplinary actions against
Lawson, and Bruno adopted those actions and imposed others. See
*supra* Background section. Lawson alleges that, "[a]s a direct
and proximate result of Defendants' viewpoint-discriminatory
actions, Professor Lawson has suffered irreparable injury,
including deprivation of his First Amendment right to free
expression[.]" [Amended Complaint at ¶ 266.]

Count II, Lawson's First Amendment retaliation claim,
is also alleged against Nelson, Mirkay, and Bruno in their
individual capacities. [Id. at pg. 63.] Count II is based upon
the same allegations as Count I and alleges: that Lawson engaged
in protected speech; that he was subjected to adverse employment
actions that would chill the speech of a person of ordinary
firmness; and that his protected speech was a substantial and

17

motivating factor behind the adverse employment actions. [Id. at ¶¶ 272-81.] Lawson alleges that, "[a]s a direct and proximate result of" the alleged retaliation, he "was and continues to be deprived of his constitutional rights[.]" [Id. at ¶ 283.]

Relevant to Count I, this district court has stated:

> Government restrictions on private speech in a nonpublic forum do not violate the First Amendment provided that they are both reasonable and viewpoint neutral. Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985); see also [Pleasant Grove City v.] Summum, 555 U.S. [460,] 470, 129 S. Ct. 1125 [(2009)]. Although the government may impose content-based restrictions by prohibiting any speech on a certain subject matter, it is "a core postulate of free speech law" that once that particular topic has been allowed, "[t]he government may not discriminate against speech based on the ideas or opinions it conveys." Iancu v. Brunetti, 588 U.S. 388, 393, 139 S. Ct. 2294, 204 L. Ed. 2d 714 (2019); accord Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 829-30, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995); Matal v. Tam, 582 U.S. 218, 248, 137 S. Ct. 1744, 198 L. Ed. 2d 366 (2017) (Kennedy, J., concurring in part). Accordingly, "[t]he test for viewpoint discrimination is whether — within the relevant subject category — the government has singled out a subset of messages for disfavor based on the views expressed." Tam, 582 U.S. at 248, 137 S. Ct. 1744.

Odquina v. City & Cnty. of Honolulu, Case No. 22-cv-00407-DKW-RT, 2024 WL 1885857, at *11 (D. Hawai`i Apr. 29, 2024) (some alterations in Odquina).

As to Lawson's First Amendment retaliation claim, this Court has stated:

The Ninth Circuit has stated that, in the public employment context,

[a] First Amendment retaliation claim turns on a sequential five-step series of questions:

(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). The plaintiff bears the burden on the first three questions. See id. at 1070-71. If the plaintiff meets this burden, the burden shifts to the defendant on the last two questions. See id. at 1071-72. When a constitutional violation has been established, a plaintiff may recover damages that are proximately caused thereby. See County of Los Angeles v. Mendez, --- U.S. ----, 137 S. Ct. 1539, 1548-49, 198 L. Ed. 2d 52 (2017). The plaintiff must also establish that the defendant's retaliatory conduct was a but-for cause of the defendant's damages. See Mendez v. County of Los Angeles, 897 F.3d 1067, 1074 (9th Cir. 2018).

Greisen v. Hanken, 925 F.3d 1097, 1108 (9th Cir. 2019).

[Order Denying Plaintiff's Ex Parte Motion for Temporary Restraining Order, filed 5/3/24 (dkt. no. 24) ("5/3 Order"), at 17-18 (alteration in 5/3 Order).[8]]

　　　　Lawson alleges his statements during the 2/17/23 Meeting that became the basis of the investigation and disciplinary process against him were made during his explanation of why he believed the Event was inappropriate and hurtful to WSRSL's Black students. Further, some of his statements at issue were made in response to comments by other faculty members. See, e.g., Amended Complaint at ¶¶ 64-75. Lawson alleges Nelson made race discrimination claims against Lawson to Bruno, even though Nelson was aware that the University had other offices where complaints of that nature should be brought. [Amended Complaint at ¶¶ 82-83.] Lawson also alleges Nelson and Mirkay encouraged, solicited, or directed other WSRSL faculty to make complaints about Lawson directly to Bruno or to others in Bruno's office. [Id. at ¶¶ 85-86.] According to Lawson, "[k]eeping the 'investigation' within Bruno's control would help assure that Defendants would be able to successfully retaliate and punish Professor Lawson for engaging in free speech and publicly exposing their racism and hypocrisy." [Id. at ¶ 85.] According to Lawson, on February 20,

_____

　　　[8] The 5/3 Order is also available at 2024 WL 1971976.

2023, Mirkay met with the complaining faculty members and sent a complaint against Lawson on behalf of Nelson and the complaining faculty members. Lawson alleges the basis of the complaint was Defendants' and the complaining faculty members' disagreement with Lawson's viewpoint. [Id. at ¶¶ 88-89.] Lawson also alleges Nelson and Mirkay were interviewed in connection with the investigation against Lawson. See id. at ¶ 207.

Further, Lawson alleges Nelson's statements about Lawson's conduct during the 2/17/23 Meeting that were used as a basis for the investigation were unfounded. See, e.g., id. at ¶¶ 172, 176, 246-48. Bruno allegedly appointed himself as the coordinator in Lawson's case even though Bruno is not the designated University coordinator for such investigations, and even though Lawson had a pending complaint against Bruno and Nelson. See id. at ¶¶ 122-23. Lawson also alleges Bruno appointed the original decision-maker, Dean Jonathan Osorio ("Dean Osorio"), even though Bruno knew that Dean Osorio could be reasonably expected to be biased in favor of Nelson and against Lawson. See id. at ¶¶ 132-35.

Based on these factual allegations and others in the Amended Complaint, this Court concludes that Counts I and II plead plausible claims against Nelson, Mirkay, and Bruno in their individual capacities. Defendants' Motion is therefore denied as to Counts I and II.

21

B. __Count VII – Due Process Claim__

Count VII, Lawson's Fourteenth Amendment procedural

due process claim, is alleged against the Individual Defendants

in their individual capacities. [Amended Complaint at pg. 74.]

Count VIII alleges Lawson's due process rights were violated

because:

-he was not provided with notice or an opportunity to be heard
    prior to the imposition of the no-contact orders or the
    restrictions on his use of the listservs, nor was he
    provided with notice and or opportunity to be heard after
    imposition of those restrictions to determine whether they
    should remain in effect; [id. at ¶¶ 330-31;]

-he was not provided with notice of all of the allegations
    against him that were ultimately considered in the
    Decision; [id. at ¶ 332;] and

-the investigation and decision-making process was not fair and
    impartial, due in part to Bruno's conflicts of interest
    that gave Bruno personal reasons to impose harsh sanctions
    against Lawson, [id. at ¶¶ 333-36].

Lawson alleges that, "[a]s a direct and proximate result of

Defendants' actions as described above, Professor Lawson was and

continues to be deprived of his constitutional rights[.]" [Id.

at ¶ 338.]

"To plead a Section 1983 claim based on procedural due

process, a plaintiff must allege three elements: '(1) a liberty

or property interest protected by the Constitution; (2) a

deprivation of the interest by the government; (3) lack of

process.'" Bear River Band of Rohnerville Rancheria v.

California Dep't of Soc. Servs., Case No. 23-cv-01809-HSG, 2024

22

WL 1055849, at *8 (N.D. Cal. Mar. 11, 2024) (quoting Portman v.
Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)). At its
core, due process requires notice and an opportunity to be
heard. See Bd. of Regents of State Colleges v. Roth, 408 U.S.
564, 570 n.7 (1972).[9]

> Public employees have a "property interest" in
> the terms and conditions of their employment if
> that interest is established "by existing rules
> or understandings that stem from an independent
> source such as state law-rules or understandings
> that secure certain benefits and that support
> claims of entitlement to those benefits." Board
> of Regents v. Roth, 408 U.S. 564, 576–77, 92 S.
> Ct. 2701, 33 L. Ed. 2d 548 (1972); Ulrich [v.
> City & Cnty. of San Francisco], 308 F.3d [968,]
> 975 [(9th Cir. 2002)].

Cooper v. Cate, No. 1:10-cv-899 AWI DLB, 2011 WL 5554321, at *4
(E.D. Cal. Nov. 15, 2011).

Lawson alleges he is a tenured professor at the WSRSL,
which is part of the University, a public entity. See Amended
Complaint at ¶¶ 8-9. Further, he is subject to a collective
bargaining agreement. See id. at ¶ 54. As noted in the
Background section, Lawson alleges he was subjected to adverse
employment actions in connection with the investigation and
disciplinary process at issue in this case. Lawson has therefore

---

[9] Roth was overruled in part on other grounds by Paul v.
Davis, 424 U.S. 693 (1976). See, e.g., Glover v. Cate, No. 2:10-
cv-0430 KJM KJN P, 2011 WL 2746093, at *3 (E.D. Cal. July 13,
2011).

adequately alleged the first two elements of his procedural due process claim.

Count VII adequately alleges that Bruno deprived Lawson of process. However, Count VII does not allege that either Nelson, Mirkay, or Lassner personally participated in the deprivation. Further, Count VII does not allege that either Nelson, Mirkay, or Lassner set in motion a series of acts by Bruno that Nelson, Mirkay, or Lassner knew or should have known would have caused Bruno to violate Lassner's due process rights. See Chaudhry, 68 F.4th at 1169. In his memorandum in opposition, Lawson refers to Lassner's failure to act upon Lawson's objections during the investigation and disciplinary process and Lassner's denial of Lawson's appeals during the process. See Mem. in Opp. at 4-5. Because these allegations are not included in the Amended Complaint, they cannot be considered in the determination of whether Count VII states a plausible claim against Lassner. Even considering all of the allegations in the Amended Complaint, Count VII fails to state a plausible procedural due process claim against Lassner. Count VII is therefore dismissed as to Lassner, but the dismissal is without prejudice because it may be possible for Lawson to cure the defects in that claim by amendment. Defendants' Motion is granted in part and denied in part as to Lawson's claim in Count VII against Lassner.

As previously noted, Lawson alleges Nelson and Mirkay
made or prompted others to make complaints about Lawson directly
to Bruno, instead of through the University offices that
typically handle similar claims, and Lawson alleges this was
done to ensure that action would be taken against Lawson by
Bruno. See Amended Complaint at ¶¶ 82-83, 85-86. These
allegations are sufficient to allege that Nelson and Mirkay set
in motion a series of acts by Bruno that Nelson and Mirkay knew
or should have known would result in the violation of Lawson's
due process rights. Count VII therefore states a plausible claim
against Nelson and Mirkay, and Defendants' Motion is denied as
to that portion of Count VII.

### III. **Section 1986 Claim**

Finally, Lawson agrees that Count VIII, his Title 42
United States Code Section 1986 claim, should be dismissed, but
he argues he should be permitted to amend that claim. [Mem. in
Opp. at 2.] He states that, based on documents he obtained in
discovery, he intends to add new defendants and factual
allegations to support his Section 1986 claim and his Title 42
United States Code Section 1985 claim. [Id. at 6.] Defendants
argue Lawson should not be permitted to amend his Section 1986
claim. See Reply at 3 & n.2.

Section 1986 states, in pertinent part:

25

> Every person who, having knowledge that any of
> the wrongs conspired to be done, and mentioned in
> section 1985 of this title, are about to be
> committed, and having power to prevent or aid in
> preventing the commission of the same, neglects
> or refuses so to do, if such wrongful act be
> committed, shall be liable to the party injured,
> or his legal representatives, for all damages
> caused by such wrongful act, which such person by
> reasonable diligence could have prevented; and
> such damages may be recovered in an action on the
> case; and any number of persons guilty of such
> wrongful neglect or refusal may be joined as
> defendants in the action . . .

A Section 1986 claim must be premised upon an actionable

Section 1985 claim. Trerice v. Pedersen, 769 F.2d 1398, 1403

(9th Cir. 1985). Lawson's Section 1985 claim underlying his

Section 1986 claim appears to rely on upon Section 1985(3),

which states, in pertinent part:

> If two or more persons in any State or Territory
> conspire . . . , for the purpose of depriving,
> either directly or indirectly, any person . . .
> of the equal protection of the laws, or of equal
> privileges and immunities under the laws; . . .
> in any case of conspiracy set forth in this
> section, if one or more persons engaged therein
> do, or cause to be done, any act in furtherance
> of the object of such conspiracy, whereby another
> is injured in his person or property, or deprived
> of having and exercising any right or privilege
> of a citizen of the United States, the party so
> injured or deprived may have an action for the
> recovery of damages occasioned by such injury or
> deprivation, against any one or more of the
> conspirators.

Based on the allegations of the Amended Complaint and Lawson's

representation that he has obtained additional information to

support Count VIII, this Court finds that it is possible for

26

Lawson to cure the defects in Count VIII. Because amendment
would not be futile, Count VIII is dismissed with leave to
amend. Therefore, Defendants' Motion is granted in part and
denied in part as to Count VIII.

Lawson is granted leave to amend his existing claim in
Count VIII against the Individual Defendants in their individual
capacities. If Lawson wishes to add **new defendants** to
Count VIII, he must file a motion for leave to amend pursuant to
Federal Rule of Civil Procedure 15(a)(2). That motion will be
considered by the magistrate judge in the normal course.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' June 13, 2024
Motion for Partial Dismissal of Plaintiff's First Amended
Verified Complaint [Dkt. 43] is HEREBY GRANTED IN PART AND
DENIED IN PART. Defendants' Motion is GRANTED insofar as:

- -all of Lawson's claims against the University are
  dismissed without leave to amend;

- -Lawson's claim against the Individual Defendants in their
  official capacities seeking the declaratory relief
  described in paragraph 5 of the Amended Complaint is
  dismissed without leave to amend;

- -Lawson's claim against Lassner in Count VII is dismissed;
  and

- -Count VIII is dismissed.

The Motion is DENIED insofar as:

-the dismissal of Lawson's claim against Lassner in
    Count VII and the dismissal of Count VIII is with
    leave to amend;

-this Court denies Defendants' request to dismiss any
    claims for monetary relief against the Individual
    Defendants in their official capacities because no
    such claims are alleged;

-this Court denies Defendants' request to dismiss any claim
    seeking the declaratory relief described in
    paragraph 352 of the Amended Complaint against the
    Individual Defendants in their official capacities;

-this Court denies Defendants' request to dismiss Counts I
    and II; and

-this Court denies Defendants' request to dismiss Lawson's
    claims against Nelson and Mirkay in Count VII.

Lawson is granted leave to file a second amended complaint by

**March 3, 2025.** Lawson is CAUTIONED that his leave to amend is

limited to Count VIII and his claim against Lassner in

Count VII. If Lawson includes any other changes in the second

amended complaint, sanctions may be imposed, including, but not

limited to, the striking of the second amended complaint.

There being no remaining claims against the

University, the Clerk's Office is DIRECTED to terminate the

University as a party on **February 18, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2025.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

KENNETH L. LAWSON VS. UNIVERSITY OF HAWAII, ET AL; CV 24-00172
LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED
VERIFIED COMPLAINT [DKT. 43]