UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KENNETH L. LAWSON,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>UNIVERSITY OF HAWAII, DAVID LASSNER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; MICHAEL BRUNO, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; CAMILLE NELSON, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; NICHOLAS A. MIRKAY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND JANE/JOHN DOES 1-10, IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>　　　　　Defendants. | CIV. NO. 24-00172 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF/COUNTERCLAIM DEFENDANT KENNETH L. LAWSON'S
MOTION FOR JUDGMENT ON THE PLEADINGS ON
<u>DEFENDANT NELSON'S COUNTERCLAIM PURSUANT TO RULE 12(C)</u>**

On March 10, 2026, Defendant/Counterclaimant Camille Nelson ("Nelson") filed her Counterclaim Against Plaintiff Kenneth L. Lawson ("Counterclaim"). [Dkt. no. 186.] Also on March 10, 2026, pro se Plaintiff/Counterclaim Defendant Kenneth L. Lawson ("Lawson") filed: a Motion for Judgment on the Pleadings on Defendant Nelson's Counterclaim Pursuant to Rule 12(c) ("Motion"); a request for judicial notice in support of the Motion ("Motion RJN"); and a corrected memorandum in

support of the Motion ("Corrected Memorandum in Support"). [Dkt. nos. 187, 188, 189.] Nelson filed her memorandum in opposition to the Motion on March 31, 2026, and Lawson filed his reply on April 6, 2026. [Dkt. nos. 191, 197.] The Motion came on for hearing on April 20, 2026.

For the reasons set forth below, Lawson's Motion is granted in part and denied in part. The Motion is granted insofar as the Counterclaim is dismissed because this Court declines to exercise supplemental jurisdiction over the Counterclaim, and the Motion is denied as to all other issues raised in the Motion.

## BACKGROUND

### I.   The Instant Case

Lawson filed this action on April 15, 2024. See Verified Complaint, filed 4/15/24 (dkt. no. 1) ("Complaint"). The operative pleading is Lawson's First Amended Verified Complaint, filed on May 30, 2024 ("Amended Complaint"). [Dkt. no. 43.]

Lawson is a tenured faculty member at the University of Hawai`i ("the University") William S. Richardson School of Law ("WSRSL" or "the law school"). See Amended Complaint at ¶ 8; Defendants' Answer to First Amended Verified Complaint, Filed May 30, 2024 [Dkt. 43] ("Answer"), filed 3/10/26 (dkt. no. 185), at ¶ 8 (admitting that portion of Lawson's ¶ 8). Nelson is the

2

Dean of the WSRSL. [Amended Complaint at ¶ 12; Answer at ¶ 12 (admitting that portion of Lawson's ¶ 12).] Lawson alleges that Defendant Michael Bruno ("Bruno") is the University Provost, [Amended Complaint at ¶ 11,] but Bruno, Nelson, and Defendant Nicholas A. Mirkay ("Mirkay," collectively "Defendants") deny this. See Answer at ¶ 11 (admitting other allegations about Bruno in Lawson's ¶ 11 and denying all remaining allegations).

Lawson's claims in this case arise from the University's response to, *inter alia*, Lawson's conduct during a February 17, 2023 WSRSL faculty meeting ("2/17/23 Meeting") and a February 21, 2023 email that Lawson sent through a WSRSL email listserv calling for a boycott of a Black History Month event that he criticized during the 2/17/23 Meeting ("2/21/23 Boycott Email").[1] See, e.g., Amended Complaint at ¶¶ 61-65, 91, 108, 124, 188, 200-03.

Clementina Ceria-Ulep, Dean of the University's School of Nursing ("Dean Ceria-Ulep"), was the decisionmaker for the University's investigation into Lawson's conduct in connection with the 2/17/23 Meeting and the 2/21/23 Boycott Email. See id. at ¶¶ 137-38. Dean Ceria-Ulep used a report submitted by the

---

[1] The 2/21/23 Boycott Email has previously been referred to in other orders as the "2/21/23 Listserv Email." See, e.g., Order Denying the Portion of Plaintiff's May 30, 2024 Motion Seeking a Preliminary Injunction, [Filed 5/30/24 (Dkt. No. 44)], filed 11/21/24 (dkt. no. 132), at 2-3.

investigation fact-finders to prepare her decision. See id. at ¶ 141. Lawson received Dean Ceria-Ulep's written decision on December 1, 2023 ("Decision"). See id. at ¶ 140. The Decision recommended that Bruno take a number of corrective actions against Lawson. See id. at ¶ 188. In a letter dated March 8, 2024, Bruno adopted the recommended corrective actions and imposed additional sanctions ("Bruno's 3/8/24 Letter"). See id. at ¶¶ 200-03.

The remaining claims in the Amended Complaint are: a Title 42 United States Code Section 1983 claim alleging viewpoint discrimination, in violation of the First Amendment, against Defendants, in their individual capacities ("Count I"); a Section 1983 claim alleging First Amendment retaliation against Defendants, in their individual capacities ("Count II"); a Section 1983 claim alleging First Amendment retaliation against Defendants, in their official capacities ("Count III"); a Section 1983 claim alleging prior restraint of Lawson's First Amendment rights against Bruno, in his official capacity ("Count IV"); a Section 1983 claim against Bruno, in his official capacity, asserting a facial and as-applied challenge to the University's Executive Policy ("EP") 1.202 ("Count V"); a Section 1983 claim against Bruno, in his official capacity, asserting a facial and as-applied challenge to EP 9.210 ("Count VI"); and a Section 1983 claim alleging violations of

4

Lawson's Fourteenth Amendment procedural due process rights, against Defendants in their individual capacities ("Count VII"). See Amended Complaint at pgs. 60-78; see also Order Granting in Part and Denying in Part Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Verified Complaint [Dkt. 43], filed 1/31/25 (dkt. no. 138) ("1/31/25 Order"), at 27-28 (dismissing other claims in the Amended Complaint).[2]

The 1/31/25 Order granted Lawson limited leave to amend his claims by filing a second amended complaint. See 1/31/25 Order at 28. Because of the anticipated filing of a second amended complaint, the defendants were not directed to file an answer to the remaining portions of the Amended Complaint. However, Lawson ultimately chose not to file a second amended complaint. See Plaintiff's Status Memorandum on Appeal and Amended Complaint, filed 8/14/25 (dkt. no. 144).

Because the remaining defendants did not file an answer to the remaining portions of the Amended Complaint, this Court directed that they do so by March 13, 2026. See Minute Order - EO: Order: Rejecting Plaintiff's Notice of Voluntary Dismissal of All Claims Against Defendant David Lassner; Directing Plaintiff to Submit a Revised Notice of Dismissal; and Requiring the Remaining Defendants to File Their Answer to the

---

[2] The 1/31/25 Order is also available at 2025 WL 358432.

Remaining Portions of the First Amended Verified Complaint, filed 2/20/26 (dkt. no. 177), at PageID.5336.[3] On March 10, 2026, Defendants filed the Answer, and Nelson filed the Counterclaim immediately thereafter.

The Counterclaim alleges that, at the 2/17/23 Meeting, "Lawson planned to and followed through on hijacking the meeting to attack and scare Nelson and WSRSL for the purpose of obtaining compensation he is not entitled to."[4] [Counterclaim at ¶ 3.] The Counterclaim also alleges that, in the 2/21/23 Boycott Email and in a February 18, 2023 email sent by Lawson to Nelson and others ("2/18/23 Email"), "Lawson published false statements about Nelson's conduct at the 2/17/23 [Meeting] to the WSRSL community to further his plan to extort compensation from the University." Id.; see also id. at ¶ 16 (quoting 2/18/23 Email). The Counterclaim asserts a defamation claim and an intentional

---

[3] Lawson's Notice of Voluntary Dismissal of All Claims Against Defendant David Lassner was filed on February 23, 2026. [Dkt. no. 180.] Thus, Defendant David Lassner was not among the defendants who filed the Answer.

[4] Lawson describes an ongoing salary dispute with WSRSL and the various grievances and legal actions that he has brought to challenge what he contends are discriminatory pay disparities. See Amended Complaint at ¶¶ 23-59. Lawson alleges the investigation into his actions at the 2/17/23 Meeting "has always been a pretext for retaliation against Professor Lawson for having filed grievances against Defendants Bruno and Nelson prior to Professor Lawson's speech and actions at and following the February 17, 2023 faculty meeting." [Id. at ¶ 135.]

6

infliction of emotional distress ("IIED") claim against Lawson. Id. at ¶ 8; see also id. at ¶ 37.

The Counterclaim relies upon quotes of: the statement that Nelson made during the University's investigation regarding Lawson's conduct during the 2/17/23 Meeting; see id. at pgs. 5-11; Lawson's 2/18/23 Email; see id. at pgs. 11-16; and the 2/21/23 Boycott Email, which forwarded an edited version of the 2/18/23 Email, see id. at pgs. 16-17.[5] Nelson emphasizes that Lawson sent the 2/21/23 Boycott Email to WSRSL faculty, staff, and students, as well as to members of the African American Lawyer Association in Hawaii ("AALA Hawaii"). [Id. at ¶ 17.]

Nelson states that AALA Hawaii sent a March 6, 2023 email to Lawson that responded to the 2/21/23 Boycott Email and expressed its disagreement with Lawson's email ("AALA Hawaii's 3/6/23 Email"). See id. at pgs. 20-21. Also on March 6, 2023, Lawson sent an email responding to AALA Hawaii's 3/6/23 Email ("Lawson's 3/6/23 Email"). See id. at pgs. 22-23. Lawson's 3/6/23 Email stated, in relevant part: "***I was wrong in how I handled this matter. If given the opportunity in the future I will apologize to [Nelson] and others for the way that I handled the matter.***" [Id. at pg. 23 (emphasis in Counterclaim).]

---

[5] The 2/21/23 Boycott Email is attached to the Counterclaim as Exhibit A. [Dkt. no. 186-1.]

According to Nelson, Lawson never apologized to her, and Nelson emphasizes that, between August 21, 2023 and January 10, 2025, Lawson filed five civil actions against her and the University, each of which relied in part on the 2/17/23 Meeting, the 2/18/23 Email, and/or the 2/21/23 Boycott Email. [Id. at ¶ 25.] Nelson alleges these lawsuits "perpetuat[e] the false statements" in the 2/18/23 Email,

> including that at the 2/17/23 [Meeting] that Nelson was "highly dismissive of the pain that was caused by this racially insensitive act. You kept saying it was a mistake. Like shit happens, and this type of racism is no big deal when directed at Black Americans who were born and raised in this racist country. . . being dismissive of this racially insensitive act by viewing my protest as overblown is troublesome and is part of the problem at our Law School and here in Hawaii."

[Id. (emphasis omitted).]

Nelson alleges that, "[t]hrough these planned events, Lawson intentionally and predictably caused Nelson . . . . serious illness, pain and emotional distress that likely will have long-term adverse effects on Nelson's health, well-being and future employment." [Id. at ¶ 26.]

The Counterclaim seeks: damages for reputational harm; special damages, including medical expenses and future loss of employment; general damages, including damages for pain and emotional distress; punitive damages; injunctive relief;

8

attorney's fees and costs; prejudgment and post-judgment interest; and any other appropriate relief. See id. at pg. 27.

## II.  The 2025 State Court Action

On January 10, 2025, Lawson filed a civil action in state court against the University of Hawai`i at Mānoa, Nelson, and Bruno. [Lawson v. Univ. of Hawai`i at Mānoa et al., 1CCV-25-0000036 (1st Cir. Ct.) ("2025 State Court Action"), Complaint, filed 1/10/25 (dkt. no. 1).] The operative pleading in the 2025 State Court Action is Lawson's First Amended Complaint, filed on January 27, 2025. [Id., dkt. no. 11.] On January 31, 2025, Nelson filed her counterclaim in the 2025 State Court Action. [Id., dkt. no. 13.] Nelson acknowledges that the Counterclaim in the instant case is the same as the counterclaim that she filed in the 2025 State Court Action. See Mem. in Opp. at 5.

On February 20, 2025, Lawson filed a motion to dismiss Nelson's counterclaim ("State Court Motion to Dismiss Counterclaim"). [Id., dkt. no. 20; id., dkt. nos. 21 to 27, 29-30 (exhibits to the motion).] Lawson brought the motion pursuant to Hawai`i Revised Statutes Sections 634G-2 and 634G-6. See id., State Court Motion to Dismiss Counterclaim at 2.

On April 29, 2025, a hearing was held on the State Court Motion to Dismiss Counterclaim, and the state court took the motion under the advisement and stayed the case. [Id., Minutes, filed 4/29/25 (dkt. no. 107).] On January 21, 2026, the

state court filed an order denying the State Court Motion to Dismiss Counterclaim. [Id., dkt. no. 114.] Lawson asks this Court to take judicial notice of that order. See Motion RJN, Exh. 1 (Order Denying Plaintiff/Counterclaim Defendant Kenneth Lawson's Motion for Dismissal of Defendant Camille Nelson's Counterclaim Against Plaintiff Kenneth L. Lawson ("State Court Counterclaim Order")).

On February 4, 2026, Lawson filed a notice of appeal from the State Court Counterclaim Order. See 2025 State Court Action, Notice, filed 2/4/26 (dkt. no. 116). The appeal was filed pursuant to Hawai`i Revised Statutes Section 634G-8. [Id. at 1.]

As of the date of this Order, the appeal, Lawson v. University of Hawai`i at Mānoa et al., CAAP-26-0000076 ("State Court Appeal"), is pending before the Hawai`i Intermediate Court of Appeals ("ICA").

III. **Motion**

Lawson argues he is entitled to judgment on the pleadings as to both of the claims in the Counterclaim. See Corrected Mem. in Supp. at 1. Lawson argues that: to the extent that Nelson's claims are based upon statements Lawson made in other civil actions, Nelson's claims are barred by the absolute litigation privilege; [id. at 3;] the remaining portions of Nelson's claims are barred by the applicable statute of

limitations; [id. at 4-7;] and, even if the remaining portions of Nelson's claims are timely, they fail to state a claim upon which relief can be granted, [id. at 7-15]. Although Lawson did not raise the issue in the Motion and the Corrected Memorandum in Support, he argues in his Reply that Nelson's claims arise only under Hawai`i law, and that this Court should decline to exercise supplemental jurisdiction over them. [Reply at 14.]

## DISCUSSION

This Court generally does not address arguments that a party raises for the first time in a reply. See Local Rule LR7.2 ("Any argument raised for the first time in the reply shall be disregarded."). However, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citation omitted). This Court therefore turns first to the issue of whether it has jurisdiction over Nelson's Counterclaim.

Title 28 United States Code Section 1367(a) states, in relevant part:

> in any civil action of which the district courts
> have original jurisdiction, the district courts
> shall have supplemental jurisdiction over all
> other claims that are so related to claims in the
> action within such original jurisdiction that
> they form part of the same case or controversy
> under Article III of the United States
> Constitution.

11

As another district court in the Ninth Circuit has noted,

> [c]ounterclaims are also governed by Rule 13 of the Federal of Rules of Civil Procedure, which categorizes counterclaims as either compulsory or permissive. See Fed. R. Civ. P. 13. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claims." Fed. R. Civ. P. 13(a)(1)(A). The Ninth Circuit applies a "logical relationship test" to determine whether a counterclaim is compulsory. See Pochiro v. Prudential Ins. Co. of Amer., 827 F.2d 1246[,] 1249 (9th Cir. 1987). The logical relationship test which requires the Court to "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Id. Failure to bring a compulsory counterclaim bars a later assertion of that claim. Fed. R. Civ. P. 13(a): Sams v. Beech Aircraft, 625 F.2d 273, 276 n.4 (9th Cir. 1980). Federal courts traditionally have supplemental jurisdiction over compulsory counterclaims because plaintiff would otherwise lose the opportunity to be heard on that claim. See Baker v. Gold Seal Liquors, 417 U.S. 467, 469 n.1, 94 S. Ct. 2504, 41 L. Ed. 2d 243 (1974).
>
> Permissive counterclaims encompass "any claim that is not compulsory" or does not "arise out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b). . . .

Martin v. L. Offs. of John F. Edwards, 262 F.R.D. 534, 536 (S.D. Cal. 2009). In determining whether a counterclaim is compulsory or permissive under Rule 13, "the court should consider whether the 'essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"

Kuschner v. Nationwide Credit, Inc., 256 F.R.D. 684, 689 (E.D.

Cal. 2009) (quoting Pochiro v. Prudential Ins. Co. of Am., 827

F.2d 1246, 1249 (9th Cir. 1987)).

> Permissive counterclaims require an independent
> basis for subject matter jurisdiction. See Otsuka
> v. Polo Ralph Lauren Corp., 2008 WL 2037621 *3
> (N.D. Cal. [May 12, 2008]) (citing Iglesias v.
> Mutual Life Ins. Co. of New York, 156 F.3d 237,
> 241 (1st Cir. 1998))[;[6]] Sparrow v. Mazda American
> Credit, 385 F. Supp. 2d 1063, 1070 (E.D. Cal.
> 2005) (citing Unique Concepts[,] Inc. v. Manuel,
> 930 F.2d 573, 574 (7th Cir. 1991)). When there is
> no independent basis for jurisdiction over a
> permissive counterclaim, the Court may still
> exercise supplemental jurisdiction over such
> claims if they are "so related to the claims in
> the action . . . that they form part of the same
> case or controversy." 28 U.S.C. § 1367(a).

Martin, 262 F.R.D. at 536 (some alterations in Martin).

Nelson's Counterclaim alleges two causes of action:

defamation and IIED. See Counterclaim at ¶ 37. Because both

claims are state law claims, federal question jurisdiction does

---

[6] "[T]he First Circuit overruled Iglesias and held that permissive counterclaims that were part of the 'same case or controversy' as the original action did not require their own jurisdictional basis." Citrus World, Inc. v. Ferraiuoli, Torres, Marchand & Rovira, P.S.C., No. CIV. 11-2118 SCC, 2014 WL 1007744, at *13 n.29 (D.P.R. Mar. 14, 2014) (quoting Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 87 (1st Cir. 2010)). However, district courts within the Ninth Circuit continue to require an independent jurisdictional basis for a permissive counterclaim. See, e.g., Nalan v. Access Fin., Inc., Case No. 5:20-cv-02785-EJD, 2020 WL 6270945, at *4 (N.D. Cal. Oct. 23, 2020) (citing Otsuka v. Polo Ralph Lauren Corp., No. C 07-02780 SI, 2008 WL 2037621, at *3 (N.D. Cal. May 12, 2008) (citing Iglesias v. Mut. Life Ins. Co. of New York, 156 F.3d 237, 241 (1st Cir. 1998))).

not exist. See 28 U.S.C. § 1331. Further, Lawson and Nelson are both residents and citizens of Hawai`i. See Amended Complaint at ¶ 8 (regarding Lawson's residency and citizenship); id. at ¶ 12 (regarding Nelson's residency and citizenship); Answer at ¶ 12 (admitting those portions of Lawson's ¶ 12). Diversity jurisdiction also does not exist in this case, see 28 U.S.C. § 1332(a)(1), and none of the specialty jurisdiction statutes, such as Title 28 United States Code Section 1333 governing admiralty, maritime, and prize cases, apply. There is, therefore, no independent basis to confer subject matter jurisdiction over the claims in the Counterclaim.

The issue before this Court is whether Nelson's Counterclaim raises compulsory or permissive counterclaims. The answer turns upon whether her claims "are so related to the claims in the action . . . that they form part of the same case or controversy." See 28 U.S.C. § 1367(a). Both Lawson's Amended Complaint and Nelson's Counterclaim describe the events occurring at the 2/17/23 Meeting and the content of Lawson's 2/21/23 Boycott Email as part of the background relevant to their respective claims. However, Lawson's Section 1983 claims primarily arise from the investigation into those events and the subsequent disciplinary process. In contrast, Nelson's defamation and IIED claims stem from specific statements Lawson made during the 2/17/23 Meeting and in the 2/21/23 Boycott

14

Email, and also from Lawson's actions occurring thereafter; specifically, emails written by Lawson and his five lawsuits (including the instant case) filed in state and federal courts against Nelson, the University, and Bruno. See Counterclaim at ¶¶ 4-5, 25-26. This Court finds that the claims asserted in Nelson's Counterclaim are not compulsory counterclaims but permissive ones. Thus, Nelson's claims are not the type of claims that federal courts traditionally have supplemental jurisdiction over. See Baker, 417 U.S. at 469 n.1.

This Court has already concluded that the claims in Nelson's Counterclaim lack an independent basis for subject matter jurisdiction in federal court. Therefore, the only remaining issue is whether supplemental jurisdiction over the permissive counterclaim should be exercised. Section 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
>
> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or

> (4)   in exceptional circumstances, there are
> other compelling reasons for declining
> jurisdiction.

After careful consideration, pursuant to Section 1367(c)(4), this Court declines to exercise supplemental jurisdiction because of the nature of the state law claims, the relationship between the state and federal claims of the parties, the more advanced stage of litigation of Nelson's counterclaims in the 2025 State Court Action, and the far broader nature of the factual issues involved in Nelson's counterclaims than the circumstances of Lawson's claims. See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172 (1997) ("Our decisions have established that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons." (citations omitted)). Lawson's Motion is granted insofar as the Counterclaim is dismissed on jurisdictional grounds.

In light of this ruling, it is not necessary for this Court to address the other issues that Lawson raises in connection with the Motion, *i.e.*, whether this Court should take judicial notice of the documents submitted with the Motion RJN, whether the absolute litigation privilege applies, whether Nelson's claims are time-barred, whether Nelson's claims are

sufficiently pled, and any other argument in the Motion that is not specifically addressed in this Order.

## CONCLUSION

For the foregoing reasons, Lawson's Motion for Judgment on the Pleadings on Defendant Nelson's Counterclaim Pursuant to Rule 12(c), filed March 10, 2026, is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as Nelson's Counterclaim Against Plaintiff Kenneth L. Lawson, also filed March 10, 2026, is DISMISSED because this Court declines to exercise supplemental jurisdiction over the claims asserted in the Counterclaim. Lawson's Motion is DENIED insofar as this Court declines to rule on the other issues raised in the Motion.

The Clerk's Office is DIRECTED to terminate the Counterclaim parties on **June 16, 2026.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2026.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**KENNETH L. LAWSON VS. UNIVERSITY OF HAWAII, ET AL.; CV 24-00172 LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTERCLAIM DEFENDANT KENNETH L. LAWSON'S MOTION FOR JUDGMENT ON THE PLEADINGS ON DEFENDANT NELSON'S COUNTERCLAIM PURSUANT TO RULE 12(C)**